UNITED STATES, Appellee

v

JOHN TASSOS, Private First Class,
U. S. Marine Corps, Appellant

18 USCMA 12, 39 CMR 12

Lieutenant Donald B. Brant, Jr., JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was Major L. G. Bohlen, USMC.

Colonel C. R. Larouche, USMC, argued the cause for Appellee, United States. With him on the brief were Commander Walter F. Brown, JAGC, USN, Lieutenant William A. Carnahan, JAGC, USNR, and Lieutenant H. L. Moore, JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

The accused pleaded guilty to, and was found guilty of, several offenses in violation of the Uniform Code of Military Justice. He was sentenced to a bad-conduct discharge, confinement at hard labor for three years, and accessory penalties. The convening authority reduced the period of confinement to two years, and a board of review thereafter affirmed the findings of guilty and the sentence, without further modification. We granted review to consider the allegation that specifications 1 and 2, Charge II, fail to state offenses.

In material part, the specifications are the same. They read as follows:

"Specification 1: In that Private First Class John TASSOS . . . did, at Da Nang, Republic of Vietnam, on or about 9 August 1967, violate a lawful general order, to wit: paragraph 4.a of I Corps Coordinator Instruction 1050.5B, dated 27 January 1967, by being in an area in Da Nang known as 'Dogpatch', without having official business therein.

"Specification 2: In that Private First Class John TASSOS . . . did at Da Nang, Republic of Vietnam, on or about 12 August 1967, violate a lawful general order, to wit: paragraph 4.a of I Corps Coordinator Instruction 1050.5B, dated 27 January 1967, by being in an area

in Da Nang known as 'Dogpatch', without having official business therein."

The I Corps Coordinator Instruction specified in the specifications traces its authority to Directive Number 10–4, December 11, 1965, issued by the Commanding Officer of the United States Military Assistance Command, Vietnam (COMUSMACV). The purpose of the Directive was to establish coordinating authorities for "specific functions and activities involving two or more Services or two or more elements of the same Service within a specific geographical area." Coordinators were responsible for implementation of coordination policies and directives of MAC-V Headquarters, and were required to establish administrative procedures "to eliminate duplication of functions" and develop "criteria for future requirements," to make recommendations "for action" with regard to Area Administrative Coordination, and to inform COMUSMACV of "significant matters concerning coordinating functions." To carry out these responsibilities, coordinators were authorized to publish directives and establish rules and regulations in specified "functional areas" affecting the "relationships of US military units or commands, Free World Military Assistance Forces, or civilians." One of the specified "functional areas" was "[p]ass and liberty regulations." Instruction 1050-

.5B of the I Corps Coordinator is apparently intended to implement the MAC-V Directive. It lists off-limits establishments and areas.

Appellate defense counsel contend that the Instruction cannot qualify as a general order, as alleged in the specifications of the Charge, because the coordinator has no power to issue such orders. They maintain the power is reserved to a commander of major commands, i. e., a command near the departmental level which possesses both a substantial role in effectuating the mission of the service and general court-martial jurisdiction. See United States v Tinker, 10 USCMA 292, 27 CMR 366. They further maintain that the coordinator's function is not command, but coordination; he may require consultation among units within the area of coordination, but he cannot compel agreement. In their view, Directive Number 10–4 did not empower coordinators to issue general orders, and the Instruction, as an implementation of the Directive, is not a general order. Consequently, each specification is legally insufficient because it does not contain an allegation that the accused had knowledge of the order. See United States v Tinker, supra; United States v Bunch, 3 USCMA 186, 11 CMR 186.

The Government contends that MAC-V can promulgate general orders and it can designate subordinate commanders "to determine what specific rules are required to give effect" to its orders. It construes the Directive as empowering coordinators to issue general orders to implement its provisions.

We need not consider the power of MAC-V or I Corps Coordinator to promulgate general orders. The narrow issue raised by this appeal is the meaning of the MAC-V Directive. That must be interpreted according to its language and purposes. United States v Gray, 6 USCMA 615, 20 CMR 331; United States v Voorhees, 4 USCMA 509, 16 CMR 83; United States v Curtin, 9 USCMA 427, 430, 26 CMR 207.

The Directive is designed to achieve uniformity among services or different units of the same service in specified areas in regard to similar functions and activities. It contemplates the adoption of common procedures by agreement of the affected units or by reference to MAC-V when agreement is unattainable. For that purpose, it delineates certain general responsibilities for coordinators. These were mentioned earlier. It also defines the coordinators' responsibilities in regard to twenty-one listed activities. The material provisions are as follows:

"4.b. Specific. The Area, Zone, Sub-zone, or Installation Coordinator is responsible for establishing administrative procedures for the purpose of regulating communal activities and providing common rules and regulations for the use of shared facilities. He is responsible for coordinating the following functions:

(1) Maintenance of law and order, to include establishment of Joint Military Police and Courtesy Patrols.

(2) Unit, area, and installation security.

.    .    .    .    .

(4) Morale, welfare, and recreation.

.    .    .    .    .

(6) Pass and liberty regulations."

The grant of authority to carry out all these responsibilities is contained in paragraph 5 of the Directive.

"5. AUTHORITY.

"a. Coordinators are delegated authority to publish directives, as required, to establish rules and regulations pertaining to functional areas in paragraph 4b, above, which affect the relationships of US military units or commands, Free World Military Assistance Forces, or civilians.

"b. Area Coordinators are delegated authority to designate Zone, Sub-zone, and Installation Coordinators in accordance with paragraph 3, above. Area Coordinators

are further authorized to adjust Installation boundaries as may be required by the tactical or administrative situation.

"c. Authority is delegated to require consultation between the elements involved but not the authority to compel agreement. When essential agreement cannot be reached, Area Coordinators will refer the matter to this headquarters.

"d. *There is no intent in this directive to delegate authority to any Coordinator to take disciplinary action against an individual.*" [Emphasis supplied.]

Reasonably interpreted, the cited provisions leave control of individuals to local unit commanders. This is recognized in the coordinator's instruction itself. It provides as follows:

"Commanding Officers will give this instruction wide dissemination and *ensure that proper implementing instructions are promulgated to all personnel of their commands.*" [Emphasis supplied.] [I Corps Coordinator Instruction 1050.5B, paragraph 5.e, January 27, 1967.]

Fairly read, the Directive and the Instruction are not orders to individuals, but require implementation to give them effect as codes of conduct. Neither publication, in its present form, operates as a general order or regulation, within the meaning of Article 92, Uniform Code of Military Justice, 10 USC § 892. United States v Hogsett, 8 USCMA 681, 25 CMR 185; United States v Farley, 11 USCMA 730, 29 CMR 546.

The decision of the board of review as to Charge II, specifications 1 and 2, and the sentence are set aside. The findings of guilty as to these specifications are set aside, and Charge II and its specifications are dismissed. The record of trial is returned to the Judge Advocate General of the Navy for submission to a board of review for reconsideration of the sentence on the basis of the remaining findings of guilty.

Judge FERGUSON concurs.