UNITED STATES, Appellee

v

CALVIN P. BAKER, Staff Sergeant, U. S. Army, Appellant

18 USCMA 504, 40 CMR 216

No. 21,910

August 15, 1969

Captain *James E. Higgins* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Lieutenant Colonel Charles W. Schiesser.*

Captain *Warren W. Kaufman* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

## Opinion of the Court

DARDEN, Judge:

Baker stands convicted of violating Headquarters, United States Military Assistance Command, Vietnam, Directive 65–50, dated June 11,. 1966, by unlawfully making monthly purchases of Treasury checks in excess of his monthly pay during the period from September 1, 1966, to January 31, 1967. Presently, his sentence consists of confinement at hard labor for fifteen months, total forfeitures, and reduc-

tion to the lowest enlisted grade. This Court is called upon to determine whether the directive in question applied to the accused's purchase of Treasury checks and whether the evidence is sufficient to show the purchases to be in excess of his monthly pay in Military Payment Certificates.

The pertinent part of the directive, which is entitled, "POSTAL SERVICE, MONEY ORDER SERVICE," is quoted below:

"1. PURPOSE. To establish procedures governing US Postal Money Order transactions.

"2. GENERAL.

"a. The US military postal system is an extension of the US Domestic Postal Service and operates in conformity with the Postal Manual, United States Post Office Department; Title 39, Code of Federal Regulations; Post Office Department instructions, and applicable service regulations and directives.

"b. This directive is applicable to all organizations, activities, and personnel authorized use of US military postal facilities within the Republic of Vietnam.

"3. RESPONSIBILITIES.

"a. Component and uni-Service commanders are responsible for executing the provisions of this directive.

"b. The commander of each installation where a military post office or branch post office is located will provide competent personnel, acceptable to the postal officer, on each pay day and the first five days thereafter for money order control purposes. The number of personnel furnished will be equal to the number of postal money order clerks utilized at the particular postal facility.

"4. POLICIES.

"a. No individual will purchase in any month more postal money orders, treasury checks, banking instruments, or any combination thereof than he draws in MPC during that month. Under exceptional circumstances, unit commanders may authorize individuals to purchase additional quantities of postal money orders. The unit commander will certify that the excess money was legitimately accrued by the individual. Postal clerks will append this certificate to the application."

At the time of the transactions in issue here, the accused was a conversion cashier for a finance unit at Koepper Compound, Republic of Vietnam. His duties included the conversion of United States currency to Military Payment Certificates for military personnel. By retaining United States currency, purchasing MPC's on the black market at a better rate of exchange, and then replacing United States currency with MPC's at a normal rate, the unscrupulous could acquire large differentials of Military Payment Certificates. Treasury checks were the means of getting these profits out of Vietnam and back to the United States. Baker has been found by the triers of fact as a "principal" in the purchase of twelve Treasury checks that designated the accused or his account as the payee. The excesses that are the subject of the instant charges became apparent when comparisons were made with the accused's pay voucher for the months in question.

The Government describes MACV Directive 65–50 as one binding upon individuals and having as its primary aim the control of currency. Construed as a whole, it is said to have effect beyond the confines of postal regulations, regulating the acquisition of negotiable instruments to be sent to the United States.

In the eyes of appellate defense counsel, the directive (1) did not apply to the accused and the transactions involved in this case, (2) is not punitive in character, and (3) is unconstitutionally vague. Because we are in accord with the first of the above assertions, the conviction of this accused must be reversed. We, therefore, need not, and we do not, consider the two remaining alternatives.

Rules applicable to the construction of statutes are applicable, generally speaking, to the construction of regulations. Revision in Rates Filed by Plainfield-Union Water Co., 57 NJ Super 158, 154 A2d 201 (1959). In United States v Curtin, 9 USCMA 427, 430, 26 CMR 207, this Court reaffirmed the basic principle that any integral part of a regulation is given meaning by consideration of the whole and every part. "Courts, therefore, should endeavor wherever practicable 'to reconcile the different provisions so as to make them harmonious and sensible.' McCaffrey, Statutory Construction, § 8 (1953)."

When viewed in its entirety, the directive at hand is keyed to the creation of procedures that will effectively regulate the postal service and postal money order transactions within it. See paragraphs 2b, 3, and 4, MACV Directive 65–50, supra. To the best of our knowledge, Treasury checks are not purchased at postal windows. Our task is to reconcile the whole of the directive with that portion of paragraph 4a, providing, "No individual will purchase in any month more postal money orders, *treasury checks,* banking instruments, or any combination thereof than he draws in MPC during that month." (Emphasis supplied.) To achieve this end, we may look to appropriate rules of statutory construction.

A statute should be interpreted in a manner that will render it consistent or in conformity with its general scope or purview. Courts may not, ordinarily, regardless of merit, extend a statute to meet cases not within its purview. Indeed, "the general purview of a statute may control the literal meaning of a particular provision." 50 Am Jur, Statutes, § 293; Anderson v Bell, 140 Ind 375, 39 NE 735 (1895). Under the rule, "general words of a statute may be restrained, and words of a narrow signification may be enlarged, to conform to the clearly apparent scope thereof." 50 Am Jur, Statutes, § 293; Leitzsey v Columbia Water Power Co., 47 SC 464, 25 SE 744 (1896).

The purpose of a statute is also a primary guideline in giving it meaning. "[A] statute is often regarded as speaking as plainly by means of the purpose which underlies it as in any other manner." 50 Am Jur, Statutes, § 303. No purpose or motive is to be imputed that is not supported by the face of the instrument itself. McPherson v State, 174 Ind 60, 90 NE 610 (1909).

Finally, we have not forgotten that penal statutes are to be strictly construed. United States v Rowe, 13 USCMA 302, 32 CMR 302.

When we consider these guideposts, we have no choice but to construe the pertinent portion of paragraph 4a, previously quoted, as being "no more than information provided to the postal clerk so that he will know how to properly limit the amount of money orders purchased by an individual."

Where the charged conduct of the accused is beyond the scope of the prohibitive regulation, his conviction under that regulation is in error and reversal must necessarily follow. United States v Webber, 13 USCMA 536, 33 CMR 68. We hold, therefore, that MACV Directive 65–50 does not punitively apply to the accused's purchase of Treasury checks.

In view of our action on the first issue assigned, a discussion of the second issue is moot.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The Charge and its specifications are ordered dismissed.

Chief Judge QUINN and Judge FERGUSON concur.