## UNITED STATES, Appellee

v

## RONALD L. ALEXANDER, Private, U. S. Army, Appellant

No. 26,748

November 16, 1973

*Marvin M. Karpatkin, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *David F. Addlestone, Esquire, Steven Delibert, Esquire, Melvin L. Wulf, Esquire, Colonel Arnold I. Melnick, Captain Ward Mundy,* and *Captain Thomas Barry Kingham.*

*Captain Joel M. Martel* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Major Thomas P. Burns, III, Captain Merle F. Wilberding, Captain Lawrence R. Ehrhard,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

DARDEN, Chief Judge:

To avoid any possible implication that the Army sanctions the causes for which demonstrations are conducted, an Army regulation prohibits demonstrations by Army members in foreign countries unless approved by competent authority. A general court-martial convicted the accused of violating this regulation. Our review of the case is to decide whether the activities of a group of black soldiers constituted a demonstration of the kind that the regulation covers and, if so, whether the regulation is an unconstitutional limitation on the First Amendment rights of the members.

A group of black soldiers, numbering 30 to 40 and including the accused, gathered outside the headquarters building of their battalion in Crailsheim, Germany, on August 26, 1970. The soldiers marched into the building, disobeying a major's order not to enter. The group packed tightly into the entranceway and the stairs to the second floor. The battalion commander, Lieutenant Colonel Morton C. Bulkley, ordered the soldiers to be quiet and to disperse. Some members of the group proposed that they proceed to Colonel Bulkley's office and occupy it. They did this. Refusing to talk with them, Colonel Bulkley left the building, followed by the group. At a flagpole near the headquarters building, the group formed a semicircle around Colonel Bulkley, who again ordered them to disperse. The response was not immediate, but the group did then move away.

Although the testimony fails to disclose the subject of the group's activity, the accused's brief asserts that the purpose was to protest "official policies in regard to racial matters."

We consider first the contention that conduct of the accused was of a kind not covered by the regulation. It provides:

46. *Participation in public demonstrations.*

Participation in picket lines or any other public demonstrations, including those pertaining to civil rights, may imply Army sanction of the cause for which the demonstration is conducted. Such participation by members of the Army, not sanctioned by competent authority, is prohibited—

*a.* During the hours they are required to be present for duty.

*b.* When they are in uniform.

*c.* When they are on a military reservation.

*d.* When they are in a foreign country.

*e.* When their activities constitute a breach of law and order.

*f.* When violence is reasonably likely to result.

Army Regulation 600-20, January 31, 1967.

There having been no submission of an application to conduct this gathering and no contention that the assembly did not occur in a foreign country, our scrutiny narrows to whether the group activity constituted a demonstration of the kind the regulation was intended to prohibit. Appellate defense counsel urge that the activity was not a public demonstration at all but an attempt peacefully to assemble and petition for redress of grievances. In responding to this assertion, Government counsel point to the evidence tending to prove that the gathering was unruly, boisterous, and demanding.

Accepting the Government's contention that the group was noisy, disrespectful, and disruptive, such behavior still does not necessarily convert the group's action into a demonstration. Specific punitive articles of the Code exist to cope with such offensive conduct. What, then, denotes a demonstration? For a definition, both sides rely on United States v Bradley, 418 F2d 688 (4th Cir. 1969).

In Bradley, the Fourth Circuit reversed convictions of University of North Carolina students who, without permission, had distributed leaflets at Fort Bragg. In issue was a post regulation establishing policies for control of demonstrations and civilian activities. The regulation prohibited, except with the approval of the base commander, " '[p]icketing, demonstrations, sit-ins, protest marches, political speeches, and similar activities. . . .' " Id. at 689. Only two students were passing out leaflets. The Bradley court had no difficulty in declaring that such action was not pick-

eting, a sit-in, a protest march, or a political speech. Instead, the court had to decide whether the students' activity was a demonstration or similar activity. The court declared:

> If there is any feature common to all the listed acts, it is that the expression they embody is not merely offered to the public, but overtly displayed and proclaimed. They are "demonstrative" activities. Such acts as picketing, sit-ins, protest marches, speeches and acts ordinarily associated with demonstrations, like parading, singing, and display of placards, all, as appellants aptly put it, "inevitably intrude upon the senses of those within earshot or eyesight." The casual passerby cannot ignore the event—he must notice it and cannot escape exposure to its message.

*Id.* at 690.

To some extent, what occurred at Crailsheim must have intruded upon the senses of those within earshot or eyesight. While the casual passerby could not have avoided observing the gathering of 30 to 40 people, their noise, and their crowding into the headquarters building, nothing in the record establishes that he would have known the reason for the gathering or the object of the group's activity. Still, the evidence in the instant case indicates that the group's activity was something like a parade and that at one stage it apparently approached being a sit-in. While an all-purpose definition of demonstration eludes us, we are unable to hold that what occurred in this case was not a demonstration. Accordingly, we proceed to consider whether it was a demonstration of the kind that the regulation prohibited.

■ The contents of the regulation quoted indicate that its purpose is to avoid implying Army sanction of the cause for which the demonstration is conducted. The regulation is essentially a penal statute that must be strictly and narrowly construed, and any doubt about its application must be resolved in favor of the accused. United States v Baker, 18 USCMA 504, 40 CMR 216 (1969); United States v Sweitzer, 14 USCMA 39, 33 CMR 251 (1963). Appellate defense counsel maintain that the purpose of the gathering was to express opposition to alleged Army practices and policies and that this virtually eliminated any danger that an observer would assume the Army approved the group's cause.

■ We believe the acts here involved were outside the scope of the Army regulation. As indicated above, the regulation's purpose was to establish military neutrality in connection with causes "for which the demonstration is conducted." Army Regulation 600-20, January 31, 1967, paragraph 46. This is consistent with the long-standing American tradition of the Army's standing aloof from any political controversy that may arise. The loyalty of our services as an institution to our constitutional form of government is almost unique in a world fraught with military rebellion. Our nation has not had "a man on a white horse," and the Army through this and similar directives apparently intended to insure that no suspicion would arise that its members, through demonstrative partisan activities, were intruding themselves and the force that they represent into the political arena.

Our conclusion is that the intent of the regulation was not to reach disorders and demonstrations concerning internal Army practices but to prohibit participation by Army members in group action on issues external to military administration, that is to say, demonstrations of the type that have in recent years been used to influence public opinion through street action. *Cf.* United States v Bradley, supra.

■ The accused's action in participating in a march on his commander's headquarters and in insistence on communication with his superiors, subversive of discipline as it may be, is simply not the type of political activity embraced within the regulation's prohibition. The evidence fails to show that the demonstration dealt with any activity or subject external to the Army. Those who observed it could not have attributed to the Army any alignment on a political issue of the day.

Since we hold that a violation of the

**22 USCMA 487**

regulation was not established, we need not consider the constitutional arguments tendered by the defense.

Our decision should not be understood as condoning or encouraging behavior such as that of the accused and his companions. Provision exists for the orderly presentation and redress of grievances in the armed forces. See Article 138, Uniform Code of Military Justice, 10 USC § 938. No member of the armed forces is entitled to decide the time and circumstances for seeking a hearing by his commanding officer or for presenting complaints or grievances to him. Nor is it necessary that a commanding officer be subjected to or tolerate group action of the nature depicted here. The Uniform Code provides many sanctions applicable to such behavior.[1] We say no more than that the particular regulation involved in this case was not violated by the accused's conduct.

The decision of the U. S. Army Court of Military Review is reversed as to Charge I and its specification. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the remaining findings of guilty.

Judge DUNCAN concurs.

QUINN, Judge (dissenting):

I agree with the majority that the activity of the group of which the accused was a member constituted a demonstration within the meaning of Army Regulation 600-20. However, unlike the majority, I perceive nothing in the text or purposes of the regulation to justify the conclusion that demonstrations on issues "concerning internal army practices" are not included within its scope.

Demonstrations on issues affecting army administration in a foreign country can be as harmful to the service as demonstrations of a political nature. On the facts in the record, the host country, with whom we have close military ties, was presented with the spectacle of a military force harassed by group action of subordinates seeking to impose their will on their commanders. In my opinion, the lack of discipline reflected by the group's demonstration presented a clear and present danger that it would cause the host nation to fear for the effectiveness of our armed forces, and thereby damage its relationship with this country.

I would affirm the decision of the Court of Military Review.

---

[1] The accused was acquitted of a charge of willfully disobeying Lieutenant Colonel Bulkley's order to disperse and return to his unit, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890. We will not speculate on the reasons for the acquittal.