**UNITED STATES**

v.

**Master Sergeant Ray LOUDER, FR 252–50–6734 United States Air Force.**

**ACM 22428.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 7 Aug. 1978.

Decided 19 March 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Patrick A. Tucker.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain James R. Van Orsdol.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ARROWOOD, Judge:

Before a general court-martial with members, accused was found guilty of conspiracy to commit graft, graft and violating a general regulation, in violation of Articles 81, 134 and 92, respectively, of the Uniform Code of Military Justice, 10 U.S.C.A. §§ 881, 892, 934. He was sentenced to confinement at hard labor for two years, forfeiture of $399.00 per month for 24 months, and reduction to the grade of sergeant.

The accused was the noncommissioned officer in charge of the Promotion Testing Unit at Bitburg Air Base, Germany. In the Specification of Charge III, it was alleged that he violated "a lawful general regulation, to wit: paragraph 17 1, Air Force Regulation 30–17, dated 15 June 1977, by tearing into pieces and placing in a waste container" a completed test card. The Article 32, Code, 10 U.S.C.A. § 832, supra, investigating officer was of the opinion that paragraph 17 1 was not punitive in nature, and therefore recommended the charge be withdrawn for failure to state an offense. The convening authority disagreed with the investigating officer's view of the regulation, but "to avoid any possible issue" amended the specification to read, "violate a lawful general regulation, to wit: paragraphs 16 and 17 1, Air Force Regulation 30–17, dated 15 June 1977, by unauthorizedly and improperly retaining possession, tearing into pieces and placing in a waste can" a completed test card.

Provisions of the regulation which relate to its punitive nature are set out below:

This regulation defines Controlled Item (Test Material) and outlines how to procure, package, handle, store, and dispose of these materials. It applies to personnel on active duty, . . .

. . . . .

4. Individual Responsibility. Persons concerned with testing in any way are responsible for safeguarding all information acquired through that testing. It is a violation of this regulation for any person to obtain, possess, or disseminate test materials (or copies of test materials), except when specifically authorized to do so. Persons subject to the Uniform Code of Military Justice (UCMJ) may be prosecuted accordingly.

. . . . .

16. Compromise of Controlled Item (Test Material). . . . Unauthorized discussion, disclosure or possession of Controlled Item (Test Material) is a violation of Article 92, UCMJ, punishable by up to 2 years hard labor and a dishonorable discharge. Proper safeguarding of Controlled Item (Test Material) is essential.

17. What Constitutes a Compromise. This is a list of compromise situations that require investigation and resolution according to paragraph 18:

. . . . .

1. Destruction of test materials under improper circumstances.

. . . . .

In addition to these sections, the commander's responsibilities as well as the exact procedures for obtaining, handling, storing and disposing of test material is spelled out in the regulation. However, no paragraph in the regulation applies overall crim-

inal sanctions for a failure to follow the prescribed procedures.

The general standards which must be met to establish a regulation as punitive are perhaps best expressed by Chief Judge Darden in *United States v. Nardell*, 21 U.S.C. M.A. 327, 45 C.M.R. 101, 103 (1972):

> No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident. *United States v. Hogsett*, 8 U.S.C.M.A. 681, 25 C.M.R. 185 (1958); *United States v. Baker*, 18 U.S.C.M.A. 504, 40 C.M.R. 216 (1969); cf. *United States v. Benway*, 19 U.S.C.M.A. 345, 41 C.M.R. 345 (1970). If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 . . . prosecution. *United States v. Tassos*, 18 U.S.C.M.A. 12, 39 C.M.R. 12 (1968) and *United States v. Woodrum*, 20 U.S.C.M.A. 529, 43 C.M.R. 369 (1971).

■ In evaluating a regulation to determine whether it has the necessary ingredients to make it punitive, the normal rules of penal statutory construction apply. The basic principle that "any integral part of a regulation is given meaning by consideration of the whole and every part" is essential to the evaluation. *United States v. Baker, supra; United States v. Curtin*, 9 U.S.C.M.A. 427, 26 C.M.R. 207 (1958); *United States v. Perkins*, 50 C.M.R. 377 (A.F.C. M.R.1975). If practicable one should seek "to reconcile the different provisions so as to make them harmonious and sensible." *United States v. Curtin, supra.* A penal regulation must also be strictly construed, and when doubt exists respecting its meaning or applicability, the doubt should be resolved in favor of the accused. *United States v. Sweitzer*, 14 U.S.C.M.A. 39, 33 C.M.R. 251 (1963); *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962); *United States v. Perkins, supra.*

■ In applying the general standards set out above to the regulation under consideration, we observe that the introductory provision contains no language that would indicate the regulation is punitive. However, it is clear that the regulation applies to the individual Air Force member. Paragraphs 4 and 16 are the only sections which authorize punitive action, and each of these sections specifically spells ·out the conduct proscribed, to wit: the unauthorized obtaining, possession, dissemination, discussion or disclosure of test materials. These paragraphs clearly define the types of misconduct that could result in punitive action and place all concerned on notice that noncompliance involves criminal sanctions. *United States v. Scott*, 22 U.S.C.M.A. 25, 46 C.M.R. 25 (1972).

When read in conjunction with the other provisions of the regulation, these paragraphs are both harmonious and sensible. *United States v. Curtin, supra.* It is clear that not every impropriety by an individual involved with testing was intended to be a criminal offense, but only that serious misconduct which presents a high risk to the proper function of the testing system.

■ Paragraph 17, which the accused was originally charged with violating, is not a paragraph with punitive sanctions. Rather, it provides guidance as to what constitutes a compromise. Some of the situations listed describe conduct that would be punishable under paragraph 4 or 16, such as discussion of the contents of test material by an examinee; others, such as the improper packaging and labeling of test material for mailing, cannot be interpreted as unauthorized obtaining, possession, dissemination, discussion or disclosure of test material and are not punishable as violations of the regulation. The improper destruction of test materials charged in the original

specification is included in the latter group. Accordingly, and as opined by the Article 32 investigating officer, the original specification failed to allege an offense under Article 92, Code, supra. *United States v. Nardell* and *United States v. Perkins*, both *supra.*

▮ The amendment made by the convening authority converted a specification which did not allege an offense into one that did. Not only was an additional reference made to a punitive paragraph of the regulation, but a description of misconduct for which criminal sanctions could be applied was added to the specification.

Trial defense counsel recognized that the government was proceeding on an "entirely new charge" and moved for appropriate relief, specifically, an investigation of the charge under Article 32, Code, *supra.** He argued that not only was a new investigation required by paragraph 33, Manual for Courts-Martial, United States, (Revised Edition), but also that it was needed by counsel to adequately prepare the defense. The military judge denied the defense motion.

Appellate defense counsel assert that the military judge erred when he denied the defense motion for a new investigation under Article 32, Code, *supra*, of the Specification of Charge III. We agree.

Paragraph 33*e*(2) of the Manual for Courts-Martial, *supra*, in discussing amendments and alterations to specifications provides in pertinent part:

If, at any time after an investigation under Article 32(b) has been conducted, the charges are changed to allege a more serious or essentially different offense, a new investigation should be directed to give the accused an opportunity to exercise the privileges afforded him by 34 and Article 32(b) with respect to the new or different matters alleged.

▮ On timely objection, an accused is entitled to enforcement of his pretrial rights without regard to whether such enforcement will benefit him at trial. *United States v. Donaldson*, 23 U.S.C.M.A. 293, 49 C.M.R. 542 (1975). When there has been a substantial change alleging a different offense, the accused has a right to a new Article 32 investigation even though there is no additional evidence to be offered. *United States v. Dozier*, 38 C.M.R. 507 (A.B. R.1966), *pet. denied*, 17 U.S.C.M.A. 658, 38 C.M.R. 441 (1967). In the case at hand, the accused's objection to being tried on an essentially different offense without the benefit of a new investigation was timely. *United States v. Payne*, 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961). We hold that the military judge's denial of the defense motion to investigate the new charge deprived accused of his pretrial rights and amounts to a denial of military due process. *United States v. Everman*, 40 C.M.R. 755 (A.C.M.R. 1969), *pet. denied*, 18 U.S.C.M.A. 644, 40 C.M.R. 327 (1969).

The other errors assigned by appellate defense counsel relative to Charge III are mooted by our disposition of that charge. The remaining assignments of error are without merit or were considered by the staff judge advocate in the post-trial review and properly resolved adversely to the accused.

The findings of guilty as to the Specification of Charge III, and Charge III, are set aside, and, in the interest of justice, ordered dismissed. Reassessing the sentence in consequence of such action, we find appropriate only so much thereof as provides for confinement at hard labor for 18 months, forfeiture of $399.00 per month for 18 months, and reduction to the grade of sergeant. The remaining findings of guilty and the sentence, as modified are

AFFIRMED.

EARLY, Chief Judge and HERMAN and ORSER, Judges, concur.

---

* Defense counsel did not object to the accused standing trial on unsworn charges. See Paragraph 33*d*, Manual for Courts-Martial, United States, 1969 (Revised Edition); *United States v. Krutsinger*, 15 U.S.C.M.A. 235, 35 C.M.R. 207 (1965); *United States v. Dozier*, 38 C.M.R. 507 (A.B.R.1966), *pet. denied*, 17 U.S.C.M.A. 658, 38 C.M.R. 441 (1967); *United States v. Kitts*, 20 C.M.R. 467 (A.B.R.1955); *United States v. Black*, 6 C.M.R. 722 (A.F.B.R.1952).