UNITED STATES, Appellee,

v.

James H. BLANCHARD, Staff Sergeant,
U.S. Air Force, Appellant.

No. 41356.
ACM 22872.

U.S. Court of Military Appeals.

Feb. 4, 1985.

For Appellant: *Colonel George R. Stevens* and *Captain Douglas H. Kohrt* (on brief).

For Appellee: *Colonel James P. Porter* and *Captain Richard O. Ely, II* (on brief).

*Opinion of the Court*

COX, Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of stealing mail matter on three occasions, and of two breaches of United States Air Forces in Europe (USAFE) Regulations, specifically 30–6 and 110–8, in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 892, respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for 30 months, forfeiture of $100.00 pay per month for 30 months, and reduction to pay grade E–3. In accordance with the military judge's recommendations, the convening authority suspended the confinement at hard labor in excess of 23 months in order that the accused could participate in the Air Force retraining program at Lowry Air Force Base, Colorado. The United States Air Force Court of Military Review affirmed the findings and sentence without opinion. We granted one issue and specified a second:

I

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO DISMISS THE SPECIFICATION OF CHARGE II SINCE USAFE REGULATION 30–6, PARAGRAPH 8e, IS NON–PUNITIVE.

II

WHETHER THE APPELLANT'S PLEAS OF GUILTY TO THE SPECIFICATION OF ADDITIONAL CHARGE II WERE IMPROVIDENT.

* There is a section of the regulation entitled "Commanders' Responbilities," but it is designed to authorize the establishment of customs offices and protocol with the Turkish authorities. In more pertinent part, it cautions:

No supplement may be issued which will relax restrictions or procedures of this regulation. In turn, nothing in this regulation is intended to conflict with, or relax policies and procedures established in regulations and di-

I

Appellate defense counsel contend that USAFE Regulation 30–6 is instructional rather than penal in nature on the grounds that there is no language in the regulation indicating that a violation carried punitive sanctions; that there is language in the regulation assigning specific responsibilities to subordinate commanders; * and that the language of paragraph 8e did not give proper notice that strict adherence to the regulatory provisions was required. In support of their argument, appellate defense counsel cite our holding in *United States v. Nardell*, 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972). Their reliance on *Nardell* is misplaced. There we held:

No single characteristic of a general order determines whether it applies punitively to members of a command. This Court's decisions have established general standards that such an order must meet before a member of the armed forces without actual notice of its provisions can be punished for violating it. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self-evident. *United States v. Hogsett*, 8 USCMA 681, 25 CMR 185 (1958); *United States v. Baker*, 18 USCMA 504, 40 CMR 216 (1969); *cf. United States v. Benway*, 19 USCMA 345, 41 CMR 345 (1970). If the order requires implementation by subordinate commanders to give it effect as a code of conduct, it will not qualify as a general order for the purpose of an Article 92 prosecution. *United States v. Tassos*, 18

rectives which may be applicable to respective members of the three services.
Para. 7b. This portion of the regulation does not require implementation by subordinate commanders in order to give it effect as a code of conduct necessary to support prosecution under Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. *United States v. Nardell*, 21 U.S.C.M.A. 327, 329, 45 C.M.R. 101, 103 (1972); *United States v. Tassos*, 18 U.S.C.M.A. 12, 39 C.M.R. 12 (1968).

USCMA 12, 39 CMR 12 (1968), and *United States v. Woodrum*, 20 USCMA 529, 43 CMR 369 (1971).

21 U.S.C.M.A. at 329, 45 C.M.R. at 103 (footnote omitted).

■ Examining the regulation as a whole we find the following language apposite:

1. *Purpose.*

a. To regulate and control the importation and disposal of personal property; . . .

b. This directive is basically designed to give general information about certain matters and also to establish positive prohibitions in certain other areas.

■ Other paragraphs contain directive phrases such as "Personnel ... will not ..." (para. 3); "No person subject to this directive will: ... (para. 4); "Personnel are prohibited from ..." (para. 5d). While some parts of the regulation are clearly informative, we have no difficulty in holding that other parts of the regulation clearly have been designed to insure compliance.

Paragraph 8e, the provision at issue here, states:

All personnel subject to this regulation, stationed in Turkey, will:

\*       \*       \*       \*       \*       \*

e. Refrain from importing personal effects and items of household goods in quantities exceeding that which may reasonably be required during their tour of duty. Personal property and household goods may be imported customs free during a period of two months before to six months after the arrival of the individual concerned or any of his dependents.

While the use of such words as "refrain from" and "reasonably be required" does not permit precise definition of its scope, there can be no doubt that some quantity must fall beyond that permitted by the regulation. We cannot categorically say that possession of three Sanyo radio/cassette players, even models costing in excess of $250 each, would be unreasonable, but we do find persuasive the willingness of the accused to make such a concession during the providence inquiry. Also supporting his plea was his admission that he sold one of the cassette players to a fellow airman.

In sum, we conclude that paragraph 8e, USAFE Regulation 30–6, is directory in nature, authorizes punitive action for noncompliance therewith, applies to Air Force personnel including the accused, and gives sufficient definition of the conduct it purports to control to permit punishment for its violation.

## II

■ The matter of the providence of the accused's guilty pleas to violating USAFE Regulation 110–8 is more troublesome. In the specification, the accused is alleged to have violated the regulation by purchasing, through the Army-Air Force, and the Navy Exchange services, goods in excess of any amount reasonably necessary for his personal use, and specifies the following items: three stereo receivers, five turntables, twelve speakers, three cassette decks, one tuner, one cassette recorder/radio, one microphone, one reel-to-reel tape deck, one pre-main amplifier, and one set of headphones. While we are aware of the propensities of some stereo afficionados to create elaborate audio systems, this list of equipment does seem excessive. However, during the providence inquiry, the accused explained that he ordered some of the equipment to send to his dependents, who did not accompany him overseas, and other equipment was for his use as a disc jockey at the Officers and NCO clubs. The accused did admit that he "bought a lot of the items that ... [he] didn't really use. ... [He] really didn't need them for ... [his] personal use per se." After a detailed inquiry as to the expected use of each item and where it was then located, the military judge stated:

Counsel, on the face of it, this amount of stereo equipment does appear to be more than reasonably necessary for the personal use of the sponsor or his dependents. However, the explanations

given to me by Sergeant Blanchard give reasonable uses for that equipment. ... I will tell counsel now that it is my inclination not to accept a plea of guilty to that charge and specification.

When the parties reconvened after the luncheon recess, the accused made a further statement in support of his proffered pleas of guilty which admitted that "[a]pproximately six pieces, ... seven pieces" were purchased for "persons not entitled to duty-free goods." The accused explained that he did not tell this story before because of "the embarrassment of the situation." However, the military judge failed to identify the specific six or seven pieces, or to delve further into the story. More significantly, he failed in his findings to reflect the difference in quantities alleged in the specification and, instead, found the accused guilty as charged.

The Government concedes that the military judge's failure to make proper exceptions and substitutions was error but argues that, since the maximum punishment for the offense charged was not affected by the amount of goods purchased, the error was not prejudicial. We agree that this omission was error but decline to leave the conviction of that specification intact. The proper procedure would be to eliminate those items in excess of the six or seven purchased for resale on the black market. However, the record before us does not permit that correction other than by pure speculation. In view of the passage of time, the fact that the accused received a sentence reduction and was sent for rehabilitative training, and that any other action we might take would be largely meaningless, we will adopt the remedy prayed for by appellate defense counsel and set aside the findings of guilty to the specification of Additional Charge II.

The decision of the United States Air Force Court of Military Review is reversed as to Additional Charge II and its specification, and Additional Charge II and its specification are dismissed. In all other respects the decision of the court below is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.