**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant RUDY R. RUIZ**
**United States Air Force**

**ACM 38752**

**9 August 2016**

Sentence adjudged 22 August 2014 by GCM convened at Los Angeles Air Force Base. Military Judge: Brendon K. Tukey (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 30 days, forfeiture of $572 pay per month until bad-conduct discharge is executed, and reduction to E-2.

Appellate Counsel for Appellant: Major Michael A. Schrama.

Appellate Counsel for the United States: Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before

MAYBERRY, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MAYBERRY, Judge:

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, contrary to his pleas, of attempted violation of a lawful general regulation, violation of a lawful general regulation, and making false official statements, in violation

of Articles 80, 92, and 107, UCMJ, 10 U.S.C. §§ 880, 892, 907.[1]  Appellant was found not guilty of larceny in accordance with his pleas.  The court sentenced Appellant to a bad-conduct discharge, confinement for 30 days, forfeiture of all pay and allowances, and reduction to E-2.  The convening authority approved only forfeitures of $572 per month until execution of the punitive discharge,[2] but otherwise approved the sentence as adjudged.

Before us, Appellant claims:  (1) Charges I and II failed to state an offense because the underlying regulation was not punitive; (2) the post-trial processing delay warrants relief; (3) the imposition of a bad conduct discharge is inappropriately severe;[3] and (4) Appellant's trial defense counsel were ineffective.[4]  Finding no error materially prejudicial to the substantial rights of Appellant, we affirm.

*Background*

Appellant was a recruiter in Lompoc, California.  He had almost 14 years of service at the time of trial and had been a recruiter for more than four years.  He was married with four children, two of whom had special needs including autism and epilepsy.  He was repeatedly recognized as a superior recruiter, and was awarded the Gold Recruiter Badge in 2012.  Between June and November of 2013, Appellant solicited donations from 18 military members participating in the Recruiter Assistance Program (RAP)—commonly referred to as RAPpers.  Appellant offered each RAPper the opportunity to work long days, including weekends, or make a donation to one of two charities:  Alex's Lemonade Stand or Military Kids with Autism.  In exchange for the donation, the RAPpers were not required to perform any recruiting duties, essentially giving them two weeks off without being charged leave.

Appellant's actions came to light when one of the RAPpers, Senior Airman (SrA) AR, expressed reluctance to provide a donation, and Appellant offered him recruiting gear (keychains, lanyards, water bottles and t-shirts) which could then be sold to raise the money.  SrA AR was uncomfortable with this and called his flight chief to see what he should do.  After speaking with the commander, the flight chief told SrA AR to go to the Vandenberg Air Force Base (AFB) Air Force Office of Special Investigations (AFOSI) and report Appellant's activities.  SrA AR went to AFOSI and agreed to work with them.  SrA AR returned to the recruiting office with money provided by AFOSI.  Appellant instructed him to put it in an envelope, and in return, Appellant completed SrA AR's RAP

---

[1] Appellant was charged with 18 specifications under Article 92, UCMJ, 10 U.S.C. § 892, and 15 specifications under Article 107, UCMJ, 10 U.S.C. § 907.  He was convicted of 15 specifications under Article 92, UCMJ, and 13 specifications under Article 107, UCMJ.  For sentencing purposes, the military judge merged the specifications under each Charge into a single specification, alleging a violation on divers occasions.

[2] Action was taken after Appellant was released from confinement.

[3] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Appellant raises this issue pursuant to *Grostefon*, 12 M.J. 431.

paperwork. Appellant told SrA AR to tell everyone he did good things on RAP and had a good time.

AFOSI ultimately ran an undercover operation where a special agent, wearing a recording device, reported to Appellant's office to perform RAP duties. After the undercover agent arrived, Appellant told him that he could have the next four days off if he would go pick up video games from someone who was selling them. He did so. The next week, the undercover agent went back to the recruiting office and said he would like more time off. Appellant told him that if he made a small donation to charity, he could have the rest of the week off. The special agent left the office and came back with $100. Appellant told him to put it in an envelope, write his name on it and choose from two charities. This incident was the basis for the attempt charge.

After the undercover operation, AFOSI briefed Appellant's commander and the investigation expanded to other individuals who had performed RAP duties with Appellant. More than 40 members were contacted, with 15-20 of them indicating they had been offered time off in exchange for money or video games.

Appellant prepared required After Action Reports (AAR) for each of the RAPpers. These reports documented the actions purportedly performed by the RAPpers. These reports were the basis of the false official statement charge. Appellant was also charged with 15 specifications of larceny based on the money provided by the RAPpers to him that had not been donated to any charity when charges were preferred.

Additional facts are discussed as necessary for each assignment of error.

*Is Air Force Recruiting Service Instruction 36-2001 Punitive?*

At trial, Appellant filed a motion to dismiss Charges I and II for failure to state an offense. Appellant asserted Air Force Recruiting Service Instruction (AFRSI) 36-2001, *Recruiting Procedures for the Air Force*, (1 August 2012), is not enforceable under Article 92(1), UCMJ. He argued this was because its purpose is not to regulate the conduct of servicemembers and it is not clearly punitive in nature due to its noncompliance with an instruction issued by a superior authority. On appeal, Appellant argues that his conviction as to Charge I and its specification and the 15 specifications of Charge II was legally insufficient because the AFRSI is not punitive since it does not comply with Air Force Instruction (AFI) 33-360, *Publications and Forms Management*, (18 May 2006) (incorporating changes through 12 July 2007).

We review issues of legal sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable

doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The term reasonable doubt "does not mean that the evidence must be free of conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001). Our assessment of legal sufficiency is limited to evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

We must determine whether violations of the applicable provisions of AFRSI 36-2001 may be punished under Article 92(1), UCMJ. "[I]f a regulation does not contain language establishing that it is a punitive regulation, a violation of the regulation is not a criminal offense under Article 92(1)." *United States v. Shavrnoch*, 49 M.J. 334, 336 (C.A.A.F. 1998). Generally, the punitive nature of a regulation is ascertained by examining the regulation as a whole to see if it "regulate[s] conduct of individual members and that its direct application of sanctions for its violation is self-evident." *United States v. Blanchard*, 19 M.J. 196, 197 (C.M.A. 1985).

Under that test, we find AFRSI 36-2001 to be enforceable under Article 92(1), UCMJ. We also find that AFRSI 36-2001 does meet all requirements of AFI 33-360. Accordingly, the convictions on Charge I and II are legally sufficient.

Appellant relies on the fact that AFI 33-360 was in force at the time AFRSI 36-2001 was published and, at the time of the alleged offenses, AFI 33-360 stated, "compliance with this publication is mandatory." Section 2.17, entitled "Specific Legal Requirements," describes the requirements for a punitive regulation, in pertinent part:

> The opening paragraph must clearly specify which parts of a publication contain mandatory provisions and prohibitions enforceable against the individual. While such language standing alone in the opening paragraph does not make a publication punitive, it becomes punitive when combined with punitive language in the body of the publication . . . . The opening paragraph must say that failure to observe the prohibitions and mandatory provisions in the publication is a violation of Article 92 of the UCMJ, or that noncompliance may result in punishment under Article 92 of the UCMJ.
>
> . . . Use language that expresses the mandatory nature of the provisions, such as "will," "will not," "shall," "shall not," "must," "must not," etc. Paragraphs containing mandatory provisions or prohibitions must state that a failure to obey is a violation of Article 92 of the UCMJ. This statement should

accompany each mandatory provision or prohibition, or may, if clear, refer to a series of mandatory provisions or prohibitions listed within a specific paragraph.

In promulgating AFI 33-360 with these specific procedural requirements, the Secretary of the Air Force's intent was made explicit: to be punitive, a publication must include the "failure to obey" language in both the opening paragraph and the applicable substantive provisions.

In a published decision, this court previously affirmed the general punitive nature of Air Education and Training Command Instruction (AETCI) 36-2909, *Professional and Unprofessional Relationships*, (2 March 2007) which similarly dealt with behavioral expectations for recruiters and Airmen participating in the Recruiter Assistance Program. *See United States v. LeBlanc*, 74 M.J. 650 (A.F. Ct. Crim. App. 2015). Appellant argues that the decision of this court in *LeBlanc* was wrongly decided, but Appellant's assessment of the *LeBlanc* holding is not dispositive for a number of reasons. First and foremost, the regulation at issue in *LeBlanc* was not AFRSI 36-2001. *See id.* at 653. Consequently, while the analysis of this court in *LeBlanc* is persuasive, our review must address the specific verbiage of AFRSI 36-2001.

Appellant cites part of paragraph 2.17.1.4 in AFI 33-360, which requires each paragraph containing mandatory provisions to state a failure to obey is a violation of Article 92, UCMJ. However, paragraph 2.17.1.4 goes on to state that "[t]his statement should accompany each mandatory provision or prohibition, or may, if clear, refer to a series of mandatory provisions or prohibitions listed within a specific paragraph."

Here, AFRSI 36-2001's opening paragraph *does* clearly specify which parts of the instruction contain mandatory provisions and prohibitions enforceable against the individual. The introductory section of AFRSI 36-2001 directs that "[f]ailure to observe the prohibitions and mandatory provisions in **paragraphs** 1.1 through 1.8.4 may result in punishment under Article 92 or other articles of the Uniform Code of Military Justice (UCMJ)." Additionally, Chapter 1, entitled "Professional Conduct Standards and Management Guidance," paragraph 1.1.2, repeats the language from the introductory paragraph stating, "Recruiting personnel who violate any prohibition in paragraphs 1.2 through 1.8 of this section (or any subparagraphs there under) are subject to disciplinary action under the UCMJ, Article 92, as well as any other applicable article of the UCMJ." Appellant was charged with violating paragraph 1.3.13, which clearly falls within the series of listed mandatory provisions and prohibitions specifically enumerated as being punishable under Article 92(1), UCMJ. As such, Appellant's claim on appeal must fail.

*Sentence Appropriateness*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant alleges that a bad-conduct discharge is inappropriately severe for the offenses of which he was convicted. We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering [Appellant], the nature and seriousness of the offenses, [Appellant's] record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). The maximum imposable sentence in this case was a dishonorable discharge, confinement for 9 years, forfeiture of all pay and allowances, and reduction to E-1. The approved sentence of a bad-conduct discharge, 30 days confinement, forfeiture of $572 per month until execution of the punitive discharge, and reduction to E-2 was clearly within the discretion of the convening authority.

Appellant argues that the sentence imposed bears no reasonable relationship to the offenses. We disagree. Appellant was entrusted with newly minted Airmen, fresh from technical training who had been indoctrinated with the core value of integrity and respect for superiors. His systematic violation of a lawful general regulation impacted not only himself, but also these Airmen. While it is true that he ultimately made donations in their names to charities, his scheme, of allowing RAPpers to buy their way out of performing RAP duties and then falsifying their records to ensure his ruse was not exposed, calls into question his rehabilitative potential.

We have given individualized consideration to this Appellant, his conduct, his military career and accomplishments, and the other relevant matters within the record of trial. We conclude that the approved sentence is not inappropriately severe.

*Ineffective Assistance of Counsel*

Appellant, pursuant to *Grostefon*, asserts that his counsel were ineffective for: (1) failing to call two witnesses whom he claims were the "most important" to his defense and "would have testified that leadership ordered them to falsify AARs" thereby refuting the false official statement allegations; (2) not using the letters he sent to each RAPper after the Article 32, UCMJ, hearing explaining his actions and returning the amount of their

donation, thereby "telling his side of the story without having to take the stand;" (3) not challenging documents which he now asserts were forged; and (4) not informing the court that the prosecution was "playing dirty" to get the outcome they wanted. Our reasoning on the first two allegations is discussed below. We summarily reject the remaining two issues which require no additional analysis or relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

In reviewing claims of ineffective assistance of counsel, "[we] look[] at the questions of deficient performance and prejudice de novo." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *United States v. Gutierrez*, 66 M.J. 329, 330–31, (C.A.A.F. 2008)).

To establish a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the first prong, the appellant has the burden to show that his "counsel's performance fell below an objective standard of reasonableness—that counsel was not functioning as counsel within the meaning of the Sixth Amendment." *United States v. Edmond*, 63 M.J. 343, 351 (C.A.A.F. 2006). The question is, therefore, whether "the level of advocacy fall[s] measurably below the performance ordinarily expected of fallible lawyers." *United States v. Haney*, 64 M.J. 101, 106 (C.A.A.F. 2006) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). Under the second prong, the deficient performance must prejudice the accused through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland*, 466 U.S. at 687). Counsel is presumed competent until proven otherwise. *Strickland*, 466 U.S. at 689–90.

This court ordered, and trial defense counsel submitted, affidavits explaining their representational efforts and trial strategy. We use the framework of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997) to determine whether a post-trial factfinding hearing is necessary to resolve "a post-trial claim that is framed by conflicting affidavits." Because we find Appellant's "affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts, [this] [c]ourt may discount those factual assertions and decide the legal issue." *Ginn*, 47 M.J at 248. There is no need to remand the case to the trial level for a *DuBay* proceeding. *Id.*; *see also United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

With regard to not calling "the most important" witnesses, trial defense counsel's affidavits and the notes of their interview of those witnesses are compelling. Both of the witnesses were interviewed by counsel. Neither of them had the depth of knowledge regarding the realities of the recruiting world and one of them had credibility issues. Furthermore, neither of them informed counsel they had ever been instructed to falsify

documents. Counsel called current and former recruiters to successfully introduce evidence of the common practice to exaggerate on AARs by crediting RAPpers with any recruiting successes that took place during their tour and the pressure to submit the AARs prior to the completion of the RAPpers' tour. However, there was no strategy to overcome the testimony of the RAPpers that they were given time off as a result of their donations.

Appellant alleges that his trial defense counsel did not use the letters he sent to each RAPper returning their "donation," information he characterizes as "evidence the prosecution did not want to come in because it would benefit him." Trial defense counsel accurately identified that the letters were inadmissible hearsay and contained significantly incriminating admissions of his wrongdoing.[5] The trial defense counsel's affidavit asserts Appellant made the decision not to testify with the full knowledge that the letters were not admissible as a "substitute" for his testimony. Trial defense counsel did effectively cross-examine each of the RAPpers, eliciting the fact that Appellant returned the amount of their "donations" to them and informed them that he had donated the same amount to the respective charity, without having to introduce the letters. This evidence was essential to the finding of not guilty on the 15 specifications of larceny.

After considering the totality of the evidence presented at trial, we find Appellant failed to meet his burden of demonstrating that his defense counsel's conduct was deficient or otherwise resulted in prejudice. *See Green*, 68 M.J. at 361. The trial defense counsel made tactical decisions regarding the appropriate strategy they believed would be most successful in light of the totality of the evidence, including admissions by Appellant. This was an "objectively reasonable choice in strategy from the alternatives available at the time" to the defense. *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001). We decline to second-guess those reasonable decisions made at trial by defense counsel. *See United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006). In light of these conclusions and applying the applicable standards, we find Appellant has failed to meet his burden of demonstrating that any deficiency in his defense counsel's conduct resulted in prejudice.

*Post-Trial Processing Delay*

Appellant asserts this court should grant him meaningful relief in light of the 57 days that elapsed between the convening authority's action and the case being docketed with this court. Under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), courts

---

[5] After the Article 32, UCMJ, 10 U.S.C. § 832 hearing, at the suggestion of Appellant's original defense counsel, Appellant sent a letter to each of the RAPpers who were named in the specifications. The letter spelled out the fact that an Air Force Regulation prohibits recruiters from soliciting donations from recruiting assistants and that he knew it was wrong but he was so focused on the good that he believed he was doing that he proceeded anyway. He also noted a recruiter is never going to hold it against a RAPper that they were not asked to do recruiting duties so that they do not get credit for RAP, expressly distinguishing the AARs he prepared from intentionally submitting false statements to deceive his supervision. Appellant goes on to say that his heart was in the right place, but his method was wrong, and that he returned the amount of the donation to each of them.

apply a presumption of unreasonable delay "where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." Appellant does not assert any prejudice, and we independently find Appellant suffered no prejudice from the delay that would authorize *Moreno* relief. Appellant instead requests the court to grant relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). We disagree that Appellant is entitled to Tardif relief based upon the delay between action and docketing with this court.

Under Article 66(c), UCMJ, this court is empowered "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." *Id.* at 224 (citing *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)). In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." The court held, "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.*

This court set out a non-exhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). Those factors include how long the delay exceeded appellate review standards, the reasons noted by the Government for the delay, whether the Government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or the institution, the "goals of justice and good order and discipline," and, finally, whether the court can provide any meaningful relief given the passage of time. *Id.* No single factor is dispositive, and we may consider other factors as appropriate. *Id.*

The Government attributes the delay to the difficulty encountered in serving the action and excess leave paperwork on Appellant[6] as well as the discovery of post-trial errors by both the legal office and higher headquarters requiring corrective actions. In support of this claim, the Government submitted an affidavit from a base-level judge advocate who explained the circumstances surrounding the overall delay in post-trial processing of the case.

While we find the 57 days between action and docketing to constitute a presumptively unreasonable delay, it does not merit sentencing relief in this case. The legal office's intensive review of the 11-volume Record of Trial took 22 days. While we find that the overall duration of the post-trial processing does not impair the public's perception

---

[6] Appellant was not assigned to Los Angeles Air Force Base where the case was tried. He was geographically separated not only from the base, but from his parent command as well.

of the military justice system or exhibit bad faith or gross negligence, we do believe the intensive review could have started before action was taken. We find the majority of factors employed when considering *Tardif* relief weigh in favor of the Government in this particular case.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court