UNITED STATES, Appellee

v

ROBERT E. CURTIN, Private E–2, U. S. Army, Appellant

9 USCMA 427, 26 CMR 207

428

No. 10,808

Decided July 3, 1958

 

*First Lieutenant Gerald G. Barton* argued the cause for Appellant, Accused. With him on the brief was *Colonel Edward M. O'Connell.*

*First Lieutenant John E. Riecker* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *First Lieutenant Avram G. Hammer.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was charged with two specifications which alleged offenses in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. The first specification alleged that he, in conjunction with others, violated a lawful general regulation (Paragraph 9f, AFFE Circular 141), "by purchasing from various branches of the Army and Air Force Exchange Activities about 8 Leica Cameras, 5 movie cameras, 2 movie projectors, not for his own use or consumption." The second specification of the Charge alleged a violation of a lawful order issued by a commanding officer by possessing liquor in enlisted billets.

To prove that the accused knew of the AFFE Circular the prosecution established that pertinent passages had been published on several occasions in the post daily bulletin. The bulletins were posted on a board in the accused's company and were also distributed to the building in which he had night duty. Members of the company were required to read the bulletin board daily. It was also shown that the regulation was paraphrased in "certificate" form in the post exchange ration books issued to all personnel.

With respect to the accused's knowl-

edge of the order prohibiting liquor in billets, the prosecution went through similar steps of showing evidence of publication and posting. In addition, this order as well as the AFFE Circular on purchasing were shown to have been the subject of orientation lectures given during company training programs. The prosecution rested without showing that the accused had actual knowledge of either the order or the Circular. The defense presented several witnesses who testified substantially that they were unaware of any restrictions on post exchange purchases. The law officer, in instructing on the elements of proof of both offenses, charged as follows:

"You are further advised that it is not necessary for the prosecution to prove that the accused had actual knowledge of AFFE Circular 141 and the order as enumerated in specification 2 of Charge I, but that he had constructive knowledge of those orders will suffice.

"Constructive knowledge of a matter exists when the accused, by the exercise of ordinary care, should have known of the matter, whether or not he did so in fact."

We granted review to consider two

issues. The first is whether the AFFE Circular in question imposed prohibitions and limitations on the conduct of individual purchasers of exchange merchandise. The second issue which seeks to test the correctness of the law officer's instruction relating to "constructive knowledge" is applicable to both specifications framed as violations of Article 92, supra.

## I

In resolving the first granted issue we must consider the following pertinent paragraph of AFFE Circular 141 which the accused is charged with having violated:

"9f. Persons authorized to purchase at exchanges will limit purchases to items which will be for their own use or consumption. Any adult member of a family of personnel authorized exchange privileges in paragraph 9a, upon proper identification, may act as an agent for any one or more members of the same family."

Essentially the accused contends that the Circular was promulgated to establish policies and procedures in regard to the creation and operation of exchange facilities and that it was never intended to regulate or restrict the conduct of individual purchasers. The Government, on the other hand, argues that the paragraph under consideration is specifically directed to individual purchasers and regulates the use that such individuals may make of such merchandise.

It is a fundamental principle that in the construction of statutes and regulations the whole and every part thereof must be considered in the determination of the meaning of any of its integral parts. Cf. United States v Hogsett, 8 USCMA 681, 25 CMR 185. It is presumed the enacting authority contemplated the whole of the statute or regulation and every part of it should be significant and effective. Courts, therefore, should endeavor wherever practicable "to reconcile the different provisions so as to make them harmonious and sensible." McCaffrey, Statutory Construction, § 8 (1953). We look to

430

the Circular itself to ascertain the intent embodied therein.

The purpose underlying the Circular's promulgation as enunciated in paragraph I was "to set forth policies and procedures of the Commander-in-Chief, Far East, with respect to the establishment and operation of all Army and Air Force exchanges and activities thereof under the jurisdiction of the Commander in Chief." The scope of the Circular is set out in Paragraph I, section 2, as follows:

"The policies and operational principles prescribed by this directive are applicable to all exchange activities of Army and Air Force organizations assigned to the Far East Command or to their subordinate commands. The references contained in paragraph 30 are also applicable except as application is specifically waived or modified by this directive and/or directives from Headquarters, Far East Command; Headquarters, United States Army Forces, Far East; or Headquarters, Far East Air Forces, as appropriate."

Paragraph III entitled "OPERATION" is subdivided into four sections which deal with responsibility for operations; authorized activities; purchases; and sales, respectively. The last-mentioned subsection enumerates in detail the personnel authorized to utilize exchange facilities in the Far East. The remaining paragraphs of the Circular deal with financial matters, administrative duties and miscellaneous provisions.

Paragraph 9, which is here involved, falls within the subsection entitled "Sales." By its terms it deals expressly with "Persons authorized to purchase at exchanges" and states in clear and unambiguous terms that such persons will "limit purchases" to items for their own use and consumption. When this provision is viewed in its proper context and considered in its relationship to the entire scheme employed in this directive, there is manifested the clear intent to prescribe limitations upon individual purchasers respecting the use of exchange purchases. If the Circular —as appellant urges—is inapplicable to

individual purchasers, then paragraph 9f would be rendered meaningless for it would be virtually impossible to supervise the disposition of purchased items. Only the purchaser can control the "use or consumption" of purchased items. He alone is capable of entertaining an intent to resell or trade such items in violation of this directive. Were the provision to be construed as being applicable to exchange employees only, we would be faced with the anomalous situation wherein a handful of military personnel employed in exchange activities would be subject to the regulation, whereas, the remaining members of the armed services would be wholly unrestricted in their use of purchases. Another significant factor is that the ration books issued to all personnel contained a certificate that the purchaser would be limited to "items for my own use, consumption or as a bonafide gift." This is clearly indicative of the practical construction given the regulation by those responsible for its enforcement. An administrative interpretation of a statute or regulation is always entitled to some weight. United States v Voorhees, 4 USCMA 509, 16 CMR 83.

The cases of United States v Ekenstam, 7 USCMA 168, 21 CMR 294, and United States v Hogsett, supra, relied on by appellant, are inapposite on their facts. In *Ekenstam* the accused was charged with an offense framed under Article 134 (Uniform Code, supra, 10 USC § 934), which alleged that he had violated a section of the Administrative Agreement between the United States and Japan by purchasing certain specified articles from a nonappropriated fund organization in Japan, and subsequently disposing of them in Japan to persons not authorized to purchase from such organizations. We held in that case that the Administrative Agreement was intended to define the rights and obligations of the signatory governments rather than to prescribe the conduct of individuals or organizations subject to their authority and thus the specification failed to state an offense. In *Hogsett*, supra, the accused, a military postal clerk, was charged under Article 92 with violating a general regulation which prohibited clerks from accepting funds for the payment of postage with the intention of affixing stamps to the article subsequent to acceptance and mailing, and which further required that mailers must affix stamps to all matters intended for mailing. There, we held that the specification failed to state an offense since the pertinent provision of the regulation merely represented "an interpretation of an advisory provision in the Post Office Department's Postal Manual."

The same Circular emanating from the same command with which we are here concerned was also present in the recent case of United States v Stone, 9 USCMA 191, 25 CMR 453. There, a unanimous Court held that knowledge may be presumed in the case of regulations promulgated by Headquarters, United States Army Forces, Far East. Although the applicability of the Circular was not before us in that case, we recognized "the authority of AFFE to issue these regulations." Accord, United States v Silva, 9 USCMA 420, 26 CMR 200. We conclude, therefore, that AFFE Circular 141 imposed valid restrictions on the conduct of individual purchasers of exchange merchandise and that a violation of those restrictions is cognizable as an offense under Article 92 of the Code, supra.

II

We next turn our attention to consideration of the law officer's instruction on constructive knowledge. With respect to the specification which alleged the violation of the AFFE Circular no problem arises. In United States v Stone, supra, we held the knowledge of a regulation emanating from a "major command" may be presumed. See also United States v Statham, 9 USCMA 200, 25 CMR 462, and United States v Silva, supra. Accordingly, as to specification 1 of Charge I, the instruction was inoperative.

A more difficult question, however, concerns the correctness of the instruction as applied to specification 2 of Charge I which alleged that the accused

**431**

"having knowledge" of a lawful order "not to introduce, possess or consume alcoholic beverages in enlisted billets," failed to obey the same. This specification was framed under Article 92(2) of the Code, supra, which provides as follows:

"Any person subject to this chapter who—

⋅ ⋅ ⋅ ⋅ ⋅

(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; . . .

⋅ ⋅ ⋅ ⋅ ⋅ ⋅

shall be punished as a court-martial may direct."

It should be noted that this section of the Article specifically refers to "knowledge," whereas section (1) of the Article contains no such reference.[1] Paragraph 171b, Manual for Courts-Martial, United States, 1951, in discussing the offense here in issue, states that such knowledge "may be actual or constructive." It defines "actual" knowledge as knowledge which has been conveyed directly to the accused. Knowledge on the other hand is "constructive" when it is shown that "the order was so published that the accused would in the ordinary course of events, or by the exercise of ordinary care, have secured knowledge of the order."

The instruction here under attack informed the court it was unnecessary for the prosecution to prove the accused had actual knowledge of the order and that proof of "constructive knowledge" would suffice. The law officer explained that "constructive knowledge" existed "when the accused, by the exercise of ordinary care, should have known of the matter, whether or not he did so in fact." Such an instruction is deficient for two reasons. First-

ly, it was capable of misleading the court into believing that evidence of constructive knowledge would have been an acceptable substitute for proof of actual knowledge. Such is not the law. Actual knowledge may, as any other matter of proof, be shown by circumstantial evidence, that is, evidence "which tends directly to prove or disprove not a fact in issue, but a fact or circumstance from which, whether alone or in connection with other facts, a court may, according to the common experience of mankind, reasonably infer the existence or nonexistence of another fact which is in issue." Paragraph 138b, Manual for Courts-Martial, supra. The court-martial may not substitute constructive for actual knowledge. However, it may be satisfied that actual knowledge has been shown by circumstantial evidence. The legal concepts of constructive knowledge and proof of actual knowledge by circumstantial evidence should not be confused. An instruction on constructive knowledge has no place in the court's deliberation upon an Article 92 offense.

There is another defect inherent in the instruction here under consideration in that it permits a conviction on the basis of an accused's negligence in failing to acquaint himself with the order rather than on the basis of knowledge of the order and its subsequent violation.[2] The main thrust of the offense is knowing disobedience of an order rather than negligent failure to ascertain knowledge of the order. This principle was impliedly recognized by the Supreme Court in the recent case of Lambert v California, 355 US 225, 78 S Ct 240, 2 L ed 2d 228. There, the appellant was convicted of violating a Los Angeles criminal registration statute which declared it unlawful for any person who had been convicted of an offense punishable as a felony in the

---

1. "Any person subject to this chapter who—
(1) violates or fails to obey any lawful general order or regulation;
⋅ ⋅ ⋅
⋅ ⋅ ⋅ ⋅ ⋅

shall be punished as a court-martial may direct."
2. Negligence is not a basis for criminal prosecution unless clearly proscribed by statute. United States v Downard, 6 USCMA 538, 20 CMR 254.

State of California to be or remain in the city for a period of more than five days without registering with the Chief of Police. The evidence showed the appellant had been, at the time of her arrest, a resident of Los Angeles for a period of over seven years. Within that time she had been convicted in Los Angeles of the crime of forgery —an offense punishable as a felony under California law—although she had never registered as required by the Municipal Code. She defended on the ground she had no actual knowledge of the ordinance but her defense was rejected in the trial court and she was convicted.

In reversing the conviction, the Supreme Court held that the registration act as applied to the appellant violated Due Process. Mr. Justice Douglas, speaking for the Court, said in pertinent part as follows:

". . . We believe that actual knowledge of the duty to register or *proof of the probability of such knowledge* and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.' *Id.,* at 50. Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no *proof of the probability of such knowledge,* he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community." [Emphasis supplied.]

The phrase "proof of the probability of such knowledge" seems to us no more than an application of the principle that in the absence of proof of actual knowledge there must be shown sufficient circumstantial evidence so as to permit a court to reasonably infer the existence of actual knowledge. This, however, is clearly distinguishable from an instruction that construcive knowledge exists when by the exercise of ordinary care an accused should have known of the matter "whether or not he did so in fact."

After the law officer had given the erroneous instruction he went on to charge the court that: "knowledge on the part of the accused, like any other fact, may be proved by circumstantial evidence, that is, by evidence of facts or circumstances from which the only reasonable and justifiable inference is that the accused had such knowledge." This advice was then followed by a detailed definition of the meaning and effect of circumstantial evidence. Such an instruction was perfectly correct and proper under the circumstances. We have held though that where two instructions are in conflict and one is clearly prejudicial the rule of correct instructions as a whole is inapplicable. United States v Noe, 7 USCMA 408, 22 CMR 198. The same result must obtain here for we have no way of knowing which instruction was relied upon by the court and we are unwilling to speculate as to the possible interpretation given the erroneous instruction. The findings of guilt of specification 2 of Charge I are reversed. The record of trial is returned to The Judge Advocate General of the Army for reference to a board of review. The board, in its discretion, may reassess the sentence on the basis of the remaining approved findings of guilt or it may order a rehearing on specification 2 of Charge I. It is so ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

With that portion of the principal opinion which places persons of the accused's class within the intendment of AFFE Circular 141, I concur. Likewise, as to the AFFE Circular, knowledge is not an element of the Article 92 offense. United States v Stone, 9 USCMA 191, 25 CMR 453.

However, I cannot read the latter

part of the opinion without experiencing the greatest reservation. The order in question was issued by the accused's commanding officer and prohibited the possession of alcoholic beverages in enlisted men's billets. It was posted on the company bulletin board which the men were directed to read once a day. In addition, the prohibition was one of the subjects mentioned in lectures given to members of the command. At the trial, the law officer instructed in effect that knowledge of the order upon the part of the accused could be shown either to be actual or constructive. This instruction was, of course, consonant with the provisions of the Manual for Courts-Martial, United States, 1951, see paragraphs 154*a*(4), 171*b*, and has been announced more than once in our cases. See United States v Arnovits, 3 USCMA 538, 13 CMR 94; United States v Snyder, 1 USCMA 423, 4 CMR 15; Manual for Courts-Martial, U. S. Army, 1949, paragraph 140*a*.

The doctrine of constructive knowledge or notice, as it is often called, is not a stranger to military law. Davis, in his well-known treatise, has the following to say:

"It is a well-known principle that all persons are presumed to know the law of the State within which they live or in which they are temporarily domiciled; a similar rule prevails as to knowledge of the orders of a military commander which have been duly promulgated to his command. It may therefore be said that an order affecting a military person becomes operative as to such person when he has received military notice of its existence and contents; that is, if the order be general in character, it becomes operative when it has been formally promulgated to the command to which it pertains; if it be special or individual in its operation, it becomes effective when it has been served upon, or received, by such person through the usual military channels." [Davis, Military Law, 2d ed, page 382.]

As to what constitutes notice, the following opinion of the Judge Advocate General is apropos:

"2. No precise rule can be laid down as to *when* a military order, affecting the status, pay, rights, or duties of an officer, can be said to become operative as regards himself. A general principle, analogous to that of the law of *notice*, should ordinarily be applied to the cases, and the order be treated as not legally taking effect until the officer is personally officially notified of the same. In the absence of an actual personal delivery to or receipt by him of the order or an official copy, the fact of the promulgation of the same at his proper military station will in general be presumed to have given him official notice of its contents—a presumption, however, liable to be rebutted by proof that, without any fault or negligence of his own, knowledge of the same was never actually brought home to him,—as where, for example, he was at the time absent on leave, or ill at a distant hospital, or a prisoner in the hands of the enemy, and therefore was not notified in fact.

. . . . . .

"Where indeed the officer fails to receive personal official notice by reason of some fault or neglect of his own, as because of his having absented himself without authority from his station when the order arrived, or because, being on detached service, he has not duly advised the Adjutant General of his address as required by par. 468, Army Regulations, he will not be permitted to take advantage of his own wrong, and the promulgation of the order, upon its receipt, at his proper station or last reported station, will be held to operate as due and effectual, or *constructive*, notice." [Winthrop, Digest of Opinions Judge Advocates General of the Army, 1895, page 545.]

Now my colleagues cast aside this long-standing doctrine claiming, inter alia, "that it permits a conviction on the basis of an accused's negligence in failing to acquaint himself with the

order." We thought otherwise in United States v Snyder, supra, for there we stated:

". . . Here, the law officer properly instructed the court that one of the necessary elements of proof was that the accused had knowledge, actual or constructive, of the camp regulation allegedly violated."

There is nothing fundamentally wrong or unfair about requiring servicemen to acquaint themselves with the rules under which they must live in peace or survive in war. Many of the regulations governing their conduct, their assignments, and matters of official and personal interest are posted in a central place for the sole purpose of bringing them to their attention. They are so informed, and if they refuse or neglect to read that which is made readily accessible to them, they must suffer the consequences of their own neglect. The turnover of personnel is rapid, and the giving of personal orders to every individual is virtually impossible. Publication on bulletin boards is, therefore, a necessity which in turn forces the armed services to resort to the doctrine of constructive knowledge. This case presents one of the finer illustrations of why that doctrine must be used. Orders were posted on a bulletin board, and the accused was informed to follow the board daily. He also should have attended the orientation lecture. Yet, knowing that orders relating to his conduct were continually being posted in a conspicuous place and being directed to become familiar with them, I will assume he fails to do so. He then violates one of the orders and is acquitted while the soldier who reads the bulletin board and then violates the same order will be convicted because he had actual knowledge of the order. One soldier is punished for his former conscientiousness, and the other is rewarded for his erstwhile negligence. This injustice may be cured by the doctrine of constructive knowledge, the policy behind which is set out in United States v Gladney, 22 CMR 360 (1956):

"The constructive notice relied upon in numerous cases involving violations of standing orders or circulars is largely a legal fiction, designed to overcome the difficulty of establishing accused's knowledge thereof. Personnel are also responsible for taking reasonable action to familiarize themselves with posted regulations, orders and details. What is reasonable in this regard must depend upon the circumstances, including the status, length of service, and duties of the individual concerned."

See also United States v Robinson, 20 CMR 816 (1955); United States v Genesee, 13 CMR 871, 876 (1953), and cases cited therein.

The status of service regulations published by inferior headquarters is analogous to administrative rules printed in the Federal Register. In the latter case, Congress has provided by statute that the appearance of rules and regulations in the Federal Register gives constructive notice of their contents, 49 Stat 502, 44 USC § 307, which notice may substantially affect civil rights, Federal Crop Ins. Corp. v Merrill, 332 US 380, 68 S Ct 1, 92 L ed 10 (1947), and impose criminal liability, United States v Comstock Extension Mining Co., 214 F2d 400 (CA 9th Cir) (1954). So, in the case of service regulations, the President, under his authority to prescribe rules of evidence before courts-martial, Article 36, Uniform Code of Military Justice, 10 USC § 836, has decreed that, when regulations are promulgated properly, knowledge of their contents is imputed to a violator. Paragraph 154a (4), Manual for Courts-Martial, supra. I believe he acted well within his authority when he so provided, since Article 92(2) does not negate constructive knowledge.

This is not an insignificant principle, for I believe that many cases which have been tried but have not yet reached us will be controlled by this decision. In addition, within the ambit of the Court's decision are all post, station, and camp regulations. Many such places are the equivalent of smaller cities with all of the attending problems of administration, control, and supervision. To require proof of actual

**435**

notice of camp regulations is somewhat akin to requiring cities to show actual knowledge of all ordinances.

In anticipation of the burdens to be placed on the services by refusing to follow the doctrine of constructive notice, the Court suggests that the element of knowledge can be established by circumstantial evidence. That does not solve the problem unless that form of evidence is permitted to establish the probability of knowledge. However, since circumstantial evidence must establish the fact beyond a reasonable doubt—to the exclusion of "every reasonable hypothesis of innocence," paragraph 74a, Manual for Courts-Martial, United States, 1951—I fail to understand how the posting of a regulation, coupled with an order that all personnel read the bulletin board, proves that any enlisted man knows the contents of the posted document. To find the ultimate fact, a court member would be required to presume a compliance with the order unless the Government can produce evidence to show the accused read the regulation. If a presumption must be used, then constructive knowledge is all that is required. And, of course, if an accused testified he did not read the bulletin board, the base for the presumption would fail and there would be no evidence to support the findings.

To avoid the contention that I have written the element of knowledge out of Article 92(2), I offer the following explanation. The first part of that Article does not provide for knowledge, and we have held that when the order emanates from certain designated headquarters, knowledge is conclusively presumed. United States v Stone, supra. Under that doctrine, evidence tending to prove lack of knowledge is immaterial and irrelevant. Not so with orders from lower headquarters. There, any evidence which has probative value to disprove the ingredients making up the base for constructive knowledge is admissible.

As to the case of Lambert v California, 355 US 225, 78 S Ct 240, 2 L ed 2d 228 (1957), I must disagree with the interpretation which my colleagues

place upon the works of Mr. Justice Douglas. "The question," said the Justice, "is whether a registration act of this character violates due process where it is applied to a person who has no actual knowledge of his duty to register, *and where no showing is made of the probability of such knowledge.*" Id. at 227. (Emphasis supplied.) The conviction is struck down because:

". . . Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community."

In this context, I do not believe that the Supreme Court is referring to circumstantial evidence of actual knowledge but rather to proof of facts which establish that a defendant should have known. Lambert had no reason to know —in other words no duty—that she must register, and there were no facts shown which tended to show the probability that she did know. The accused in the instant case stands on a different plane. He was a member of a service unit who had been advised that regulations pertaining to his conduct had been posted in a conspicuous place which was easily accessible for him to read. He was directed to acquire the knowledge by reading what was posted. In all probability, he did know. In *Lambert,* the conduct of the petitioner was wholly passive, "unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." Id. at 228. Despite these distinctions, I prefer to join with the minority in that case, and I quote from Mr. Justice Frankfurter, who spoke for the dissenters:

"If the generalization that underlies, and alone can justify, this decision were to be given its relevant scope, a whole volume of the United States Reports would be required to document in detail the legislation in this country that would fall or be im-

436

paired. I abstain from entering upon a consideration of such legislation, and adjudications upon it, because I feel confident that the present decision will turn out to be an isolated deviation from the strong current of precedents—a derelict on the waters of the law."

I wish in this instance I could share the dissenters' confidence but, unfortunately, I see an armada, not just a derelict.

I would affirm the decision of the board of review.