UNITED STATES

v.

**Sergeant Earl C. DOVER, FR 454–96–0525**
**355th Avionics Maintenance Squadron**
**Ninth Air Force (TAC).**

ACM 22198.

U. S. Air Force Court of Military Review.

27 June 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Captain Charles Teschner and Lieutenant Colonel Abraham A. Dash, USAFR.

Before BUEHLER, HERMAN and OR-SER, Appellate Military Judges.

DECISION

ORSER, Judge:

Tried by a general court-martial, with members, the accused was convicted, despite his not guilty pleas, of possessing marihuana, tetrahydracannabinol and mesca-

beh6765

line, and of failing to obey an order by possessing a rifle, a pistol and ammunition in his base dormitory room, all in violation of Article 92, Uniform Code of Military Justice. He was also found not guilty of a charge of larceny of various items of Government property. The approved sentence provides for a bad conduct discharge, forfeiture of all pay and allowances for one month, and reduction to the grade of airman basic.

Appellate defense counsel have assigned three errors for our consideration. We find no merit in those which contend there was no probable cause to search the accused's quarters for weapons, ammunition and drugs, and that the commander who authorized the search was not a neutral and detached magistrate. In the remaining error, which does have merit, counsel contend:

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING THAT THE ACCUSED HAD ACTUAL KNOWLEDGE OF BASE SUPPLEMENT 1 TO AIR FORCE REGULATION 125–37, THE ORDER HE WAS CHARGED WITH VIOLATING.

The order in issue was promulgated on 28 May 1975, in a local supplement to the Air Force Regulation. The text provided:

All personnel who reside in the dormitories, or other facilities including transient, used primarily as troop housing to include BEQ, BOQ, VOQ, TLQ are not authorized retention or possession of any firearms and/or ammunition.

Since the directive was not a general regulation, the Government had the task of proving the accused's actual knowledge of its terms. Manual for Courts-Martial, 1969 (Rev.), paragraph 171(b). The trial counsel presented no evidence to show that the order was communicated directly to the accused. Instead, his effort to establish that element of the offense consisted of evidence designed to show circumstantially that the accused had the necessary knowledge.

The Government's initial witness, a Sergeant Labaff, testified that in December, 1974, in his role as career advisor, he gave the accused his annual career counseling.

Sergeant Labaff stated that the annual advisement ordinarily includes the information that weapons are not allowed in the barracks, however, he could not recall whether he specifically told the accused about the weapons policy.

A second Sergeant testified that he was the barracks chief of the accused's dormitory. He related that a copy of Wing Regulation 30–1, dated 13 November 1975, was maintained in the dormitory and, in fact, a copy of the regulation was supposed to be in each room. The Sergeant testified that he saw a copy of the regulation in most of the rooms.

Wing Regulation 30–1, though of course not the order the accused was charged with violating, contained very similar language concerning weapons proscriptions. In the prosecutor's view, it directly referenced the specific order the accused was charged with violating. The pertinent provision stated, "Firearms, weapons, and knives are prohibited in dormitories (AFR 125–37 and as supplemented)." The directive further provided:

A copy of this regulation will be prominently displayed on each dormitory bulletin board. Copies will be maintained by each dormitory manager to provide guidance to room occupants and bay orderlies.

The barracks chief stated that he had made a recent effort (as a matter of fact, while the trial was in progress) to determine if all the rooms in the accused's dormitory contained a copy of the wing directive. Premised on what he termed a "rough check," he opined that a copy of the regulation was in approximately 60 to 62 of the 67 rooms in the building. The witness admitted that this total was no more than a guess arrived at on the basis of a conversation with a few dormitory occupants who informed him they did not have copies of the regulation in their rooms. As we understand his testimony, he subtracted those negative responses from the total number of rooms in the dormitory to reach his conclusion. The Sergeant said he had "no idea" of how many of the rooms contained a copy of the directive on 20 July 1976, the

766

day the rifle, pistol and ammunition were seized from the accused's room.

■ As is suggested by the trial counsel's efforts, the cited paragraph 171(b) of the Manual for Courts-Martial, supra, provides that the accused's knowledge of an order of less than general applicability may be circumstantially shown—by providing facts from which the court may infer that the accused had actual knowledge of the order. The referenced Manual provision further provides:

Circumstantial evidence includes evidence that the order was generally known in the command, that it had been posted at such a time and place that the accused would be likely to have read it, and similar circumstances tending to prove the knowledge.

See *United States v. Curtin*, 9 U.S.C.M.A. 427, 26 C.M.R. 207 (1958).

■ As contended by appellate defense counsel, the Government's proof included none of the recognized methods of proving knowledge by circumstantial evidence, nor anything of a similar nature which tended to prove that the accused was aware of the order charged. The testimony that over a year before commission of the offense the accused had been given annual counseling, which may have included advice that weapons were not permitted in the barracks, had little or no relevance. Besides being equivocal, the counseling session antedated the publication date of the order by over five months. See *United States v. Thompson*, 41 C.M.R. 977 (A.F.C.M.R. 1970); *United States v. Hedgecock*, 30 C.M.R. 624 (N.B.R. 1960).

■ The evidence relating to Wing Regulation 30–1 was similarly insufficient to establish even a "probability" that the accused was aware of the order he was charged with violating. *United States v. Curtin*, supra, quoting *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). Such evidence fell short of estab-

lishing that the wing directive, let alone the base commander's order published in the supplement, was generally known, that it was posted where the accused would have been likely to have read it, or any similar circumstances tending to prove he was aware of either its prohibitions or references. In any event, the mere reference to "AFR 125–37 and as supplemented," following the wing directive's language banning weapons in the dormitories, was insufficient to establish that the accused had the required actual knowledge of the referenced order. At most, such evidence tended to establish that the accused in the ordinary course of events or by the exercise of due care would have secured knowledge of the order. In other words, the evidence was calculated to establish only constructive knowledge. Evidence of constructive knowledge is not an acceptable substitute where, as here, actual knowledge must be shown. *United States v. Curtin*, supra.

■ Under the circumstances, the Government failed to establish that the accused had actual knowledge of the order violated.* Accordingly, the finding of guilty of Specification 2, Charge I, is incorrect in law and fact and is hereby set aside and dismissed. In consequence of this action, we have reassessed the sentence. On the basis of the entire record, and in further light of the policy expressed in paragraph 88b of the Manual for Courts-Martial, supra, limiting forfeitures to not more than two-thirds pay per month when an accused is not serving confinement, we will reduce that portion of the punishment.

The findings of guilty, as modified herein, and so much of the sentence as provides for a bad conduct discharge, forfeiture of $200.00 of one month's pay, and reduction to the grade of airman basic are

AFFIRMED.

BUEHLER, Chief Judge, and HERMAN, Judge, concur.

---

* For purposes of this decision we are assuming that the language of this directive in issue is sufficiently definite and unambiguous to quali-fy as a lawful order for purposes of Article 92(2) prosecution.