UNITED STATES

v.

**Airman First Class Russell C. MINER, Jr., FR 106–52–1551, United States Air Force.**

**ACM S27028.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Feb. 1986.

Decided 14 Nov. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles E. Ambrose, Jr.

Appellate Counsel for the United States: Colonel. Kenneth R. Rengert and Lieutenant Colonel Donal F. Hartman, Jr.

Before HODGSON, STEWART, HOLTE, FORAY, MICHALSKI, LEWIS, SESSOMS and MURDOCK, Appellate Military Judges, En Banc.

## DECISION

FORAY, Senior Judge:

Appellant is attacking the jurisdiction of the special court-martial which tried and convicted him [1] by assigning the following error for our resolution:

WHETHER COLONEL [W] WAS NOT THE COMMANDER OF THE 92ND COMBAT SUPPORT GROUP, AND COULD NOT THEREFORE, TAKE ANY ACTION AS THE SPECIAL COURT–MARTIAL CONVENING AUTHORITY, AFTER 26 JANUARY 1986.

The facts necessary to the understanding of the assigned error are brief. Colonel W had assumed command of the 92nd Combat Support Group (hereinafter, the Group) on 9 August 1985. During the period from 26 through 31 January 1986, he was absent from the Group in a temporary duty status at another installation attending a Base Commander's Course. On 22 January, Colonel M, the Commander, 92nd Bombardment Wing (hereinafter, the Wing), had caused to have prepared a special order "appointing" Lieutenant Colonel C as commander of the Group during Colonel W's absence. On 24 January, Colonel W had caused to have prepared a special order assuming command of the Group, effective 1 February.

The charges of which appellant was convicted were preferred against him on 31 January, and referred to a special court-martial that same day by Lieutenant Colonel C. The endorsement to the charge sheet shows that Lieutenant Colonel C referred the charges to a special court-martial convened by a special order dated "3

February 1986". On 6 February, Colonel W attempted to remedy this anomaly by withdrawing the charges that had been referred to the court convened by the 3 February special order and referring them to a special court-martial convened by him in a special order dated 6 February. Appellant's trial then took place the following day.

The essential part of appellant's claim is that the purported actions of Colonel W in "assuming" command on 1 February and referring charges against appellant to trial on 6 February were nullities. Specifically, he urges that, at the time, Colonel W was not eligible to assume command of the Group as Lieutenant Colonel C was not absent therefrom and, as a result, was not empowered to convene the court-martial that tried and convicted the appellant.

One of the requisites to court-martial jurisdiction pertinent to our inquiry is that "the court-martial must be convened by an official empowered to convene it." R.C.M. 201(b)(1). A group commander is one of the officials who is empowered to convene a special court-martial. Article 24(a)(4), U.C.M.J., 10 U.S.C. § 824(a)(4). To determine whether Colonel W was a group commander and, therefore, empowered to convene the special court-martial which tried appellant we must turn to the regulatory provisions regarding devolution of command promulgated by the Secretary of the Air Force.[2]

Air Force Regulation (A.F.R.) 35–54, Rank, Precedence, and Command (15 September 1981) and its changes provide us with the guidelines necessary to resolve the issue before us. Pursuant to Interim Message Change (I.M.C.) 85–1 to A.F.R. 35–54, paragraph 10, there are two ways an officer may succeed to command. They are by assumption of command, a unilateral act, and by appointment to command, an act of

---

1. Pursuant to his pleas, appellant was found guilty of wrongfully using and wrongfully distributing marijuana, in violation of Article 112a, U.C.M.J., 10 U.S.C. § 912a. He was sentenced to a bad conduct discharge, confinement for six months, forfeiture of $426.00 per month for six months, and reduction to the grade of airman basic.

2. According to R.C.M. 504(b)(1), Discussion, "The rules by which command devolves are found in regulations of the Secretary concerned."

competent authority. The Secretary of the Air Force, acting for the President under the Presidential *alter ego* doctrine, has delegated certain authority to appoint to command to certain officers and commanders. 10 U.S.C. § 749(a), I.M.C. 85–1 and I.M.C. 85–3 to A.F.R. 35–54, paragraph 10b. In the case before us, as a result of the Secretary's delegation of authority, Coionel M, the Wing Commander, was empowered to appoint Lieutenant Colonel C to command a unit of his command, the Group, on 26 January 1986. I.M.C. 85–3 to A.F.R. 35–54, paragraph 10(b)(1).

■ Succession to command may be permanent or temporary. An assumption of command may be either permanent or temporary, while the appointment to command is always permanent. Both of the permanent actions work to divest the previous commander of command responsibility permanently. The temporary action divests the previous commander of command responsibility temporarily, and when that commander returns from his or her absence, he or she is revested with command automatically. The same result does not obtain when a commander is divested of command by a permanent assumption of command or an appointment to command of another officer and the replaced former commander returns. In this instance the returning officer may be revested with command only if he or she assumes command or is appointed to command by competent authority. I.M.C. 85–1 to A.F.R. 35–54, paragraphs 10c and 18.

This Court has previously held that where a former commander returns to his or her organization after having been divested of command by the appointment of another officer to command, he or she may be revested with command only if appointed by competent authority or by assumption of command. We said that for an assumption of command by a former commander to be valid the appointed commander who is sought to be replaced must be in a prolonged absence status. In effect, we said that the mere fact of the former commander's return is not sufficient to validate

his or her assumption of command. *United States v. Bierley,* 23 M.J. 557 (A.F.C.M.R.1986); *United States v. Pazdernik,* 22 M.J. 690 (A.F.C.M.R.1986); *United States v. Jette,* 22 M.J. 803 (A.F.C.M.R.1985).

Appellant Government counsel submit that our previous holdings should not be applied in this case. Their claim is that our prior holdings clearly overlook the language of A.F.R. 35–54, paragraphs 10 and 10a. In their view, the mere fact that Colonel W returned to the Group and was the most senior officer in both grade and rank was sufficient for him to legitimately assume command of the Group, regardless of the fact that Lieutenant Colonel C had been appointed to command the Group by a competent superior authority. They contend that the regulatory provisions referred to did not require anything more, such as the prolonged absence of Lieutenant Colonel C.

■ We are, once again, called upon to interpret the provisions of A.F.R. 35–54 as they relate to appointment to and assumption of command. Guiding us in this regard is the basic principle that in the construction of statutes and regulations the whole and every part thereof must be studied in the determination of its integral parts. *United States v. Curtin,* 9 U.S.C. M.A. 427, 26 C.M.R. 207 (1958); *United States v. Voorhees,* 4 U.S.C.M.A. 509, 16 C.M.R. 83 (1954); *United States v. Gregory,* 21 M.J. 952 (A.C.M.R.1986). We must attempt, if practicable, to reconcile seemingly different provisions of A.F.R. 35–54 so as to make them harmonious and sensible. We are hampered in this regard in that the provisions of I.M.C. 85–1 to A.F.R. 35–54, paragraph 10, are not exactly models of clarity. As this Court stated in *United States v. Pazdernik, supra,* the language of this paragraph is somewhat ambiguous. Specifically, the language in paragraph 10c, which addresses appointment to command, states that appointments to command are always permanent but then goes on to suggest that they may also be temporary. This is indicated in the language of the paragraph which states:

When the regularly-assigned commander is absent only temporarily and then returns after another officer has been appointed he or she is revested with command only if he or she actually assumes command, or is appointed to command.

We have previously held that, in spite of this ambiguous language, something more than the mere return of the former commander is needed to legitimize his or her assumption of command; that being the incumbent commander must be in a prolonged absence. We also held that even though the superior commander who appoints an officer to command intends that appointment to be temporary, that intention cannot be given any force or effect. *United States v. Bierley; United States v. Pazdernik; United States v. Jette,* all *supra.*

Support for our holdings may be found in A.F.R. 10–7, Administrative Orders (30 September 1981), paragraph 2–2 which was in effect when the issue before us arose. That paragraph states, "The effective date in an appointment order automatically voids the appointment of the former commander." Since I.M.C. 85–1 to A.F.R. 35–54 was promulgated and the seemingly ambiguous language added, A.F.R. 10–7, 30 September 1981, was superseded by A.F.R. 10–7, 15 September 1986. As stated in the summary of changes in the new edition of that regulation, one of the purposes for the revision was to highlight the differences between command appointments and assumptions of command. In paragraph 2–1 of the revised regulation, with regard to command actions, it states that "unless directed otherwise by a higher headquarters, the senior eligible officer assigned to a unit is its commander." Similar language is found in I.M.C. 85–1 to A.F.R. 35–54, paragraph 10a. The revised edition of A.F.R. 10–7, paragraph 2–3, contains the same language regarding the automatic voiding effect of an appointment upon the appointment of the former commander as did paragraph 2–2 of the superseded edition. Neither edition of A.F.R. 10–7 makes any mention of any administrative action to be taken when the "regularly appointed commander is absent only temporarily and then returns after another officer has been appointed".

We find that the language in I.M.C. 85–1 to A.F.R. 35–54, paragraph 10c, concerning the return of the temporarily-absent, regularly assigned commander after another officer has been appointed does not authorize the returning officer to assume command merely by virtue of the fact he has returned and is the senior officer in both grade and rank. The regulatory language concerned is confusing and in conflict with other parts of A.F.R. 35–54, as well as with A.F.R. 10–7, chapter 2. We are unable to reconcile these differing provisions to make them harmonious and sensible. Illustrative of this conflict is the use of the words "when the regularly assigned commander is absent only temporarily" in paragraph 10c, when they are considered with the explanations of appointment to command in both A.F.R. 10–7 and A.F.R. 35–54 as being permanent and automatically voiding the appointment of the former commander. If any substance is to be given to the meaning of an appointment to command, then the return of the regularly assigned commander from a temporary absence is an impossibility. When a commander is replaced by the *appointment* of another, that new commander's appointment is permanent and the former commander's appointment is voided.

If the former commander does return he or she may be appointed to command by competent authority or may assume command. In the latter instance the assumption may not be based upon the mere return of the former commander but must be based upon the incumbent commander's prolonged absence. *United States v. Bierley; United States v. Pazdernik; United States v. Jette,* all *supra;* I.M.C. 85–1 to A.F.R. 35–54, paragraph 18a.

In the case before us we find that Colonel W was not properly in command of the Group on 6 February 1986, and, therefore, was not empowered to convene the

special court-martial that tried and convicted the appellant. When the Wing Commander appointed Lieutenant Colonel C as commander of the Group on 26 January 1986, that appointment was permanent and automatically voided the appointment of Colonel W. We are not persuaded by the argument that the Wing commander intended Lieutenant Colonel C's appointment to be only temporary. The Wing commander was acting under a delegation of authority[3] and could not alter the terms of an appointment to make it a temporary one. When Colonel W returned to the Group he was not and could not be the regularly assigned commander returning from a temporary absence. Even though Colonel W may have been, at the time of his return, the officer senior in both grade and rank and otherwise eligible to command, he was precluded from doing so because Lieutenant Colonel C had been appointed by a superior competent authority. I.M.C. 85–1 to A.F.R. 35–54, paragraph 10b(1). Colonel W could have been returned to command of the Group in one of two ways, (1) by being appointed thereto by competent authority, or (2) by assuming command, during the prolonged absence of Lieutenant Colonel C.

For the reasons stated, the findings of guilty and the sentence are set aside. Another trial may be ordered. R.C.M. 810.

Chief Judge HODGSON, Senior Judge SESSOMS and Judges MICHALSKI and MURDOCK, concur.

Judge HOLTE, not participating.

Judge STEWART (dissenting):

I respectfully dissent.

The key to this case is Air Force Regulation 35–54, 15 September 1981, as amended, which is entitled Rank, Precedence, and Command. This regulation sets forth the Air Force's internal rules as to who is in command of a unit, how appointment to command may be made, how assumption of command may be accomplished, and how

regularly assigned commanders, who were temporarily divested of command, may be revested with command. Who is in command, and thus a court-martial convening authority, at any given point in time will be determined by application of this regulation. It is not a punitive regulation; it is, to the contrary, a regulation which deals with the internal administration of the Air Force. Unfortunately there are seemingly inconsistent provisions in this regulation. Thus, we must apply appropriate rules of construction to divine the meaning of the regulation and its parts.

In interpreting regulations having a bearing on military justice, "... the same rules of interpretation generally applied to statutory construction," are employed. *United States v. Leonard*, 21 M.J. 67, 69 (C.M.A.1985) "... [C]riminal statutes must be strictly construed, [and] any ambiguity must be resolved in favor of the accused." *United States v. Schelin*, 15 M.J. 218, 220 (C.M.A.1983). On the other hand, statutes relating to procedure and extension of jurisdiction to courts are generally liberally construed. See *Sutherland Statutory Construction*, 4th Ed., Vol. 3, §§ 67.02, 67.03.

Regardless of whether strict or liberal construction is to be applied, military appellate courts have espoused certain rules. "Regulations and statutes are to be construed with reference to their manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat that object, they should receive the former construction." *United States v. LaGrange*, 3 C.M.R. 76, 78 (C.M.A.1952). "... [W]hen alternative interpretations are possible, the one selected should be that which gives effect to the purpose of the writings." *United States v. Voorhees*, 16 C.M.R. 83, 102 (C.M.A.1954). "It is presumed the enacting authority contemplated the whole of the ... regulation and every part should be significant and effective. Courts, therefore, should en-

**3.** The special order announcing the appointment of Lieutenant Colonel C as Group commander contained the statement that the appointment was "by direction of the President" as required by A.F.R. 10–7, paragraph 2–2a.

deavor whenever practicable 'to reconcile the different provisions so as to make them harmonious and sensible.' " *United States v. Curtain,* 26 C.M.R. 207, 210 (C.M.A. 1958). "... [S]tatutes must be interpreted, when possible, to carry out the purposes intended and to give force and effect to all the words and phrases." *United States v. French,* 27 C.M.R. 245, 252 (C.M.A.1959). "... [I]n construing a statute, significance should be accorded every word and, if it can be prevented, no clause or word should be rendered superfluous, void or insignificant." *United States v. Batchelor,* 19 C.M.R. 452, 505, 506 (A.B.R.1954), *affirmed,* 22 C.M.R. 144 (C.M.A.1956). In summary it is fair to say, "... [I]t is the construction that produces the greatest harmony and least inconsistency which must prevail." *United States v. Johnson,* 3 M.J. 361, 362 (C.M.A.1977). *See United States v. Gregory,* 21 M.J. 952 (A.C.M.R. 1986) for a recent application of these principles.

On 19 June 1985 the Air Force changed paragraph 10 of AFR 35–54 to read, in part;

> c. Permanent and Temporary Actions.... When the regularly-assigned commander is absent only temporarily and then returns after another officer has been *appointed* he or she is revested with command only if he or she actually assumes command or is appointed to command. In either case, new orders are necessary. (Emphasis supplied).

The majority of my brethren decline to give full effect of the language quoted above. They believe it is confusing and conflicts with other parts of AFR 35–54, as well as with AFR 10–7, Chapter 2.[1] Specifically they find that, "the language in I.M.C. 85–1 to AFR 35–54, paragraph 10c, concerning the return of the regularly-assigned commander after another officer has been appointed does not authorize the returning officer to assume command merely by virtue of the fact he has returned and is the senior officer in both grade and rank." To the contrary, they hold the regularly-assigned commander must be reappointed or might assume command if the appointed officer were away in prolonged absence in accordance with AFR 35–54, paragraph 18.

They are preoccupied with other language in paragraph 10c which says appointments to command are "always permanent." This appears immediately prior to the language concerning the regularly-assigned commander reassumption of or reappointment to command where he was "absent only temporarily." According to the rules of construction we should reconcile conflicting language if we can. That is not so difficult in this case as the majority professes. If the language authorizing the regularly-assigned commander to reassume command is read as an exception to the permanency of appointment concept, the ambiguity is resolved. Common sense dictates that "permanent" cannot be applied in any absolute sense. Change of command in the Air Force always takes place ultimately due to reassignment, retirement, death, or other reasons. Even the majority recognizes that appointment of another can terminate a previous "permanent" appointment to command. Surely the "permanent" appointment concept can accommodate a qualification or exception expressly written into this regulation.

· The majority apparently reasons that because the appointment of another to command voids the first officer's appointment to command, there is no longer any "regularly-assigned" commander who is absent only temporarily. This is the perfect "Catch 22," rendering the paragraph 10c language in question a useless oddity.

---

**1.** The preamble to AFR 35–54, states, "This regulation tells how to determine rank, precedence, seniority, and command responsibility of Air Force military personnel." On the other hand, AFR 10–7 is a regulation which explains how administrative orders are written reproduced, and distributed. It is concerned with the ministerial tasks of preparing written orders, not with the substantive authority for determining who is in command. While some general principles concerning command are reiterated in AFR 10–7, they are obviously intended merely to orient the order's writer.

Surely this type of reasoning is not the kind the rules of construction contemplate.

However, the most serious flaw in my brothers' position is their failure to meaningfully consider I.M.C. 85–3 (August 1985), AFR 35–54, paragraph 10a. The pertinent part of the paragraph reads:

Assumption of command: The command of an Air Force unit devolves on the senior assigned eligible officer who is present for duty, unless that officer is prohibited from assuming command by higher authority, or, *with the exception of paragraph 10c below,* unless another officer has been appointed to command ... (new language added by I.M.C. 85–3 underlined.)

This new language can mean little else but that paragraph 10c is an *express* limited exception to the prohibition of a senior officer assuming command where another officer has been appointed to command. In other words, the drafters of AFR 35–54 undoubtedly sought to make it abundantly clear that a returning regularly-assigned commander could assume command from an officer appointed to command during the former's temporary absence. Our decisions [2] in *United States v. Bierley,* 23 M.J. 557 (A.F.C.M.R.1986) and *United States v. Pazdernik,* 22 M.J. 690 (A.F.C.M.R.1986) suffer from the same infirmity. We should not further nurture it in this case.

Bearing in mind the rules of construction previously reviewed, I believe the conclusion that Colonel W was in command at the pertinent times is the construction which produces the greatest harmony and least inconsistency. We are not interpreting a penal statute or punitive regulation. We are free to, and indeed should, apply those rules so as to reconcile different provisions, give force and effect to all provisions, produce the greatest harmony, avoid defeating the object of the regulations, and, when possible, carry out the purposes intended. Accordingly, I interpret AFR 35–54 to permit a junior officer to be appointed com-

mander during the temporary absence of the regularly-assigned commander and to permit the regularly-assigned commander, upon his return, to reassume command. Any other interpretation would render portions of I.M.C. 85–1 and I.M.C. 85–3 to AFR 35–54 meaningless.

I would affirm the findings of guilty and the sentence.

LEWIS, Judge (dissenting):

A mystery which lingers concerns Colonel W's status when he returned to duty at the Group if he did not reassume command. I.M.C. 85–1, to AFR 35–54, paragraph 9, provides, in pertinent part: "However, in accordance with 10 U.S.C. § 749(a), there is no authority for an officer to command another officer of higher grade." It would appear that Lieutenant Colonel C, by virtue of his junior grade, was unable to exercise command over his "former" superior. I find it difficult to comprehend that the drafters of the directive could have intended an anomaly such as this to develop. For this reason, as well as those articulated by Judge Stewart, I would give effect to the reassumption language of paragraph 10c in this case.

Even a faulty directive is entitled to a fair reading, especially when, as here, Colonel W placed good faith reliance on what it seemingly authorized. The shoe appeared to fit, and he wore it. I concur with Judge Stewart's analysis which demonstrates to my satisfaction that the shoe did, in fact, fit. I, too, would affirm the findings of guilty and the sentence.

---

**2.** Our decision in *United States v. Jette,* 22 M.J. 803 (A.F.C.M.R.1985) is of no assistance in this case. While the situation was similar, the pertinent events occurred before promulgation of I.M.C. 85–1 and I.M.C. 85–3 to AFR 35–54.