TELLER, Senior Judge,
dissenting:
Although I join my esteemed colleagues in finding that the military judge retained the authority to sua sponte reconsider any ruling prior to her timely authentication of the record of proceedings, I respectfully dissent from the remainder of the court’s opinion. In my view, both the military judge and the majority opinion depart from the plain language of AFI 44-121 in holding that the relevant inquiry is whether Appellee had received or been notified of an order to provide a urine sample rather than inquiring whether such an order had been issued.[8]
*524 As noted by the majority, the limited protections of AFI 44-121 apply to Airmen who make voluntary disclosures to the unit commander, first sergeant, substance use/misuse evaluator, or a military medical professional with the intention of entering drug treatment. ¶,3.7.1.2.1. By the express terms of AFI 44-121, such disclosures are not voluntary when the Airman has previously been: (1) apprehended for drug involvement, (2) placed under investigation for drug abuse, (3) ordered to give a urine sample as part of the drug-testing program in which the results are still pending or have been returned as positive, (4) advised of a recommendation for administrative separation for drug abuse, or (5) entered treatment for drug abuse. ¶¶ 3.7.1.2.4.1-3.7.1.2.4.5.
The military judge reasoned in her analysis that the key inquiry concerning voluntariness is “not whether the member should have known that he was going to receive an order, nor whether'an order was signed, rather it is whether he was notified of the order.” The military judge did not provide any authority for her interpretation of voluntariness in this context.
“[Rjules applicable to the construction of statutes are generally applicable to the construction of regulations.” United States v. Burton, 42 C.M.R. 970, 972 (A.F.C.M.R. 1970); United States v. Baker, 40 C.M.R. 216 (C.M.A. 1969).
It is well established that when the statute’s language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms. There is no rule of statutory construction that allows for a court to append additional language as it sees fit.
United States v. Kearns, 73 M.J. 177, 181 (C.A.A.F. 2014) (internal quotation marks and citations omitted). The military judge, instead of applying the plain language of AFI 44-121 that a disclosure is not voluntary if the Airman “has previously been ... ordered to give a urine sample,” appended a further condition that the Airman actually received such an order.
In part, the military judge appears to have relied on the elements of the offense of failure to obey a lawful order under Article 92, UCMJ, 10 U.S.C. § 892. As she accurately summarized, that offense has four elements: (1) that a member of the armed forces issued a certain lawful order; (2) that the accused had knowledge of the order; (3) that the accused had a duty to obey the order; and (4) that the accused failed to obey the order. Manual for Courts-Martial, United States (MCM), Part IV, ¶16.b.(2) (2012 ed.). The military judge appears to have reasoned that, in order for Appellee to have been “ordered to give a urine sample,” he must have been subject to sanction under Article 92, UCMJ, for any failure to do so. I disagree. The Manual treats the existence of an order as only one element of the offense of failure to obey a lawful order. Indeed, the existence of two independent elements, issuance of an order and knowledge of that order, necessarily implies that those inquiries are separate and distinct in' establishing a violation of Article 92, UCMJ. I see no reason why they should not also be separate and distinct in interpreting AFI 44-121.
The majority opinion notes that the military judge consulted AFI 90-507 in deciding whether Appellee had been ordered to provide a sample. The record, however, indicates that the commander in this case went beyond the requirements of AFI 90-507 in at least one material sense. The sample notification letter in AFI 90-507 does not purport to order the subject to provide a sample. The record in this ease indicates that, pursuant to a standard operating procedure,, an agent of the commander prepared a document addressed to Appellee, bearing the commander’s signature, and including the phrase “you have been selected and are hereby ordered to provide a urine specimen for drug testing purposes.” While there may be a material issue as to whether the document prepared by the agent constituted an order for the purposes of AFI 44-121, the military judge failed to reach that question before ruling that Appellee’s statements and urinalysis results were not admissible. Accordingly, an analysis of the requirements of AFI 90-507 alone is not sufficient to determine whether the limited protections of AFI 44-121 applied in this case.
*525 The majority opinion also correctly discounts any assertion that the computer-generated testing roster constituted an order to provide a sample. I concur that we have not yet reached a point where a computer can, without more, generate a military obligation. Any government argument to the contrary is without merit.
The majority does not address, however, the effect of the preparation of the written order by the commander’s agent. Case law suggests that a commander who retains all discretionary authority related to a certain order may lawfully delegate to subordinates the ministerial aspects of promulgating the order. See United States v. Ayers, 54 M.J. 85, 90 (C.A.A.F. 2000). The record in this case clearly raised the issue of the existence of an order, and the military judge had an obligation to ascertain whether that order negated the voluntariness of Appellee’s disclosures, rather than applying a standard of delivery of the order not found in the plain language of AFI 44-121.
Finally, even though the verb “ordered” could reasonably be applied to both the common situation where a superior verbally conveys a mandate directly to a subordinate as well as promulgation of a written order of general or specific application, that does not render the word “ordered” ambiguous. Ambiguity does not exist simply because more than one specific example can be enumerated under a broader concept. See Moskal v. United States, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (“Because the meaning of language is inherently contextual, we have declined to deem a statute ‘ambiguous’ for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the -Government.”). The plain meaning of “ordered” is not restricted to direct verbal orders, and we should not apply such a restricted notion here.
Even if I were to conclude that the meaning of the phrase “has previously been ordered” is not plain, the surrounding text of AFI 44-121 would lead me to conclude that the drafters did not intend to preclude a finding of voluntariness only when the subject had actually received an order to provide a sample.
First, the language of AFI 44-121 indicates that the drafters were aware of the distinction between an official act and knowledge of that act. In the subparagraph immediately following the provision relating to orders to provide a sample, AFI 44-121 lists another exception to voluntariness: when the Airman has previously been “advised of a recommendation for administrative separation for drug abuse.” ¶ 3.7.1.2.4.4. Since the drafters were cognizant of the difference between being recommended for separation and being advised of that recommendation, it is rational to infer that they knew the difference between being ordered to provide a sample and being notified of that order. Despite this apparent awareness, they chose not to specify delivery of the order (or notification, or even knowledge) as the triggering condition for the exception to voluntariness. I recognize and appreciate the majority opinion’s sound policy arguments for encouraging self-identification. The decision of how best to vindicate those policy concerns, along with all the other policy concerns relevant to drug abuse prevention and treatment, is the appropriate province of the drafters of the instruction, not this court.
Second, while I considered the argument that our interpretation of voluntariness, as a state of mind, should by its nature include only those facts of which the subject was aware, the surrounding context of AFI 44-121 shows that the drafters did not intend that interpretation. As a general rule, inquiry into a .state of mind is a subjective one. Indeed, in Schneckloth v. Bustamonte the Supreme Court described the “very object” of a voluntariness inquiry as “the nature of a person’s subjective understanding.” 412 U.S. 218, 230, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Were we to apply the general rule and engage in a subjective examination, then we would indeed inquire into whether Appel-lee’s statements that he had an appointment to “make a drop” showed his subjective awareness of the order.
However, in the context of AFI 44-121, voluntary is a defined term, so we do not apply the general rule. The exception to *526 voluntariness immediately preceding the provision at issue here involves cases when the subject has previously been “placed under investigation for drug abuse.” AFI 44-121, ¶ 3.7.1.2.4.2. In the routine course of events, the subject of a drug abuse investigation is often not aware that the investigation has begun, It would be a far stretch indeed to ignore that practical reality and interpret into the investigation exception the same notice requirement that the military judge read into the exception at issue here. Because I conclude that the drafters of this specific definition of voluntariness did not intend the investigation exception to have an implicit notice or awareness requirement, I am not persuaded by the argument that we should read one into the urinalysis exception simply because under a different rule of law such awareness might have been relevant.
Finally, in light of the practical realities of the Ah’ Force random urinalysis program, the military judge’s interpretation of the exception at issue here would undermine, not facilitate, the purpose of that section of AFI 44-121. As the Supreme Court noted in FDA v. Brown & Williamson,
It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.
FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (internal quotation marks and citations omitted). The exceptions to voluntariness in AFI 44-121 indicate one clear and overriding intent: despite the compelling policy reasons to encourage self-identification, those aims should not allow an Airman to escape accountability for drug abuse by admitting illicit use only after its discovery through independent means has already become likely. That is the only interpretation that integrates all of those disparate exceptions “into an harmonious whole.”
In light of that overall regulatory scheme, this court should not read into AFI 44-121 a requirement that would frustrate its purpose by allowing Airmen to evade accountability by disclosing their drug use to a covered party after they become aware of an impending order to submit a sample, but before that order is delivered. The military judge acknowledged in her findings of fact that Ap-pellee had been ordered to provide a urine sample nine times prior to the test at issue here, and that Appellee himself “believed he was selected for a random urinalysis that afternoon.” If this court is to give meaning to the exceptions to voluntariness enumerated in AFI 44-121, then at the very least our inquiry should be whether the subject was aware of the imminent order, not the rote formality of actual delivery of the written order. Cf. United States v. Nettles, 74 M.J. 289, 292 (C.A.A.F. 2015) (“[Cjourts should not require Svhat amounts to livery of seisin’ to effectuate a discharge.”). Actual delivery of a written order is not required for a prosecution under Article 92, UCMJ. See United States v. Curtin, 9 USCMA 427, 432, 26 C.M.R. 207 (C.M.A.1958) (“Actual knowledge may, as any other matter of proof, be shown by circumstantial evidence.”). We should not artificially read it into the exception here.
In my view, the military judge abused her discretion by appending an additional notice or delivery requirement to the plain language of AFI 44-121, ¶ 3.7.1.2.4.3. Accordingly, I would remand the ease to the trial court for a determination whether an order for Appellee to submit a mine sample had been issued and a reconsideration of the admissibility of the disclosures and urinalysis results based on that determination.

. Although not dispositive, I find United States v. Alexander, 26 M.J. 988 (A.F.C.M.R. 1988), inapplicable to the statements overheard by (SSgt) JE in the emergency room. In Alexander, the disclosures at issue were made to the first sergeant and drug treatment personnel, bringing the disclosures and the urinalysis results directly stemming from those disclosures under the limited protection of the regulation. Id. at 991. In this case, the military judge found that Appellant’s statements were spontaneous emotional statements, not made to SSgt JE, but overheard by him as Appellant was pacing in the emergency room. They were not disclosures made to "the unit commander, first sergeant, substance use/misuse evaluator, or a military medical professional.” Air Force Instruction (AFI) 44-121, Alcohol and Drug Abuse Prevention and Treatment (ADAPT) Program, ¶3,7.1.2,1 (8 July 2014). While there may be sound policy reasons to extend the limited protection afforded under AFI 44-121 to other spontaneous statements made by an Airman while under the immediate emotional effects of self-identification, such an extension would be far beyond the plain language of the AFI, and in my view, beyond this court's authority, Accordingly, I would not reach the issue of when such evidence is independently derived and I decline to join that part of the court's opinion.